No. 25-1393

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

————————————

D.V.D., *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. Department of Homeland Security, *et al.*,

*Defendants-Appellants*.

————————————

On Appeal from the United States District Court
for the District of Massachusetts

————————————

## EMERGENCY MOTION FOR STAY PENDING APPEAL AND
## IMMEDIATE ADMINISTRATIVE STAY

————————————

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

ANTHONY P. NICASTRO
*Acting Director*

ELIANIS N. PEREZ
*Assistant Director*

MATTHEW P. SEAMON
MARY L. LARAKERS
*Senior Litigation Counsel*
U.S. Department of Justice,
Civil Division
Office of Immigration
Litigation
P.O. Box 868,
Ben Franklin Station
Washington, DC 20044

# INTRODUCTION

In certain circumstances, the government may remove an alien to a country other than a country selected by the alien (usually the alien's home country). *See* 8 U.S.C. § 1231(b). The district court entered a preliminary injunction restricting the removal to these so-called "third countries" of a vast, nationwide class of aliens. The order imposes nonstatutory notice and waiting requirements on the government before the government may remove class members.

The district court lacked jurisdiction to enter that relief under *multiple* independent statutory bars. Congress has repeatedly made clear that it does not want district courts to adjudicate the types of claims Plaintiffs raise in this posture. Indeed, the injunction entered was, quite impressively, quintuply barred (or more). But the district court simply plowed through one dipositive jurisdictional bar after the next.

Most obviously, the injunction is barred by 8 U.S.C. § 1252(f), as confirmed by the Supreme Court's decision in *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022). The district court acknowledged that § 1252(f) would seem to bar classwide relief, but it nevertheless issued such relief by engaging in an untenable reading of the underlying statutes. The district court's wrongheaded attempt to circumvent the plain text of § 1252(f) and binding precedent interpreting it underscore the extraordinary unlawfulness of this injunction.

The injunction is also irreconcilable with Section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), which implements Article 3 of the Convention Against Torture (CAT) and provides that "[n]otwithstanding any other provision of law, and except as provided in the regulations described in subsection (b), no court shall have jurisdiction to review the regulations adopted to implement this section." FARRA § 2242(d). That is precisely what the district court did by engaging in judicial review of the CAT regulations and enjoining DHS to implement specific CAT procedures beyond what is in those regulations. The district court did not even try to explain how its preliminary injunction could be squared with that provision.

In addition to § 1252(f) and FARRA, four other subsections of § 1252—subsections (a)(4), (a)(5), (b)(9), and (g)—independently bar this suit and the district court's preliminary injunction. These provisions collectively bar district courts from considering *all* challenges to orders of removal (including to their execution), channel claims arising from the removal process into the courts of appeals, and divest the district courts of jurisdiction to hear challenges like this one. The district court's order enjoining the government's operation of the country-of-removal statute on a nationwide basis is unlawful.

In any event, the government has established procedures that comport with the requirements of CAT as well as due process. Thus even if the district court's

injunction were not jurisdictionally barred multiple times over, it would fail on the merits too.

The government will suffer tremendous irreparable harm absent a stay, and the balance of equities favors interim relief, so this Court should grant a stay pending appeal. Even assuming that nationwide injunctions are ever appropriate, ones that violate Congress' clear prohibition on non-individualized relief that enjoins the immigration removal statutes—such as the one imposed here—do not withstand scrutiny and are plainly an abuse of discretion. Moreover, given the obvious and egregious nature of the errors below and immediate harms to the government, this Court should grant an immediate administrative stay while it considers a full stay pending appeal.

## FACTUAL BACKGROUND

The named Plaintiffs are four aliens with final orders of removal resulting from proceedings in which they were notified that they could be removed to a designated country of removal or, potentially, a third country of removal. ECF No. 1, Compl. ¶ 1. Plaintiff E.F.D. is a native and citizen of Ecuador and is currently in ICE custody. Compl. ¶ 76; ECF No. 31-1 ¶ 19. Plaintiffs D.V.D. (citizen of Cuba) and M.M. (citizen of Honduras) are not detained. ECF No. 31-1 ¶¶ 23, 33-34, 38. Plaintiff O.C.G. is a native and citizen of Guatemala who was removed to Mexico on February 21, 2025, after the Department of Homeland Security (DHS) provided

him notice that he was being removed to Mexico and he did not assert a fear of removal to that country. *Id.* ¶¶ 4, 13.

On March 23, 2025, Plaintiffs sued on behalf of a putative class, alleging that DHS violates the Immigration and Nationality Act (INA), its regulations, and the Due Process Clause of the Fifth Amendment by removing, or seeking to remove, the aliens to a third country without first providing them with notice or an opportunity to assert a claim that they fear persecution or torture if removed to that third country. *See generally* Compl. On that same date, Plaintiffs moved for a temporary restraining order, and preliminary injunction, and class certification. ECF Nos. 4, 7.

On March 28, the Court granted Plaintiffs' Motion and issued a temporary restraining order. ECF No. 34. Hours later, Defendants moved for an emergency stay of this order in this Court. On April 7, this Court denied a stay, citing concerns about its jurisdiction. *D.V.D. v. DHS,* No. 25-1311, Stay Order, (April 7, 2025).

On March 30, Defendants issued new guidance regarding DHS's removal of aliens with final orders of removal pursuant to INA §§ 240, 241(a)(5), or 238(b) (8 U.S.C. §§ 1229a, 1231(a)(5), 1228(b)) to a third country. ECF No. 43-1. This guidance provides that, before an alien's removal to a country that had not previously been designated as the country of removal, DHS must determine whether that country has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured. ECF No. 43-1 at 1. If the United States has

received such assurances, and if the U.S. Department of State (DOS) believes those assurances to be credible, the alien may be removed without the need for further procedures. *Id.* at 1-2.

If the United States has not received those assurances, or if the DOS does not believe them to be credible, DHS will first inform aliens with final orders of removal pursuant to 8 U.S.C. §§ 1229a, 1231(a)(5), or 1228(b) of their removal to a third country. ECF No. 43-1 at 2. This notice will allow the alien an opportunity to assert a fear of removal to that third country. *Id.* If an alien asserts a fear of removal to that third country, U.S. Citizenship and Immigration Services (USCIS) will screen the alien for eligibility for protection under 8 U.S.C. § 1231(b)(3) and under CAT. *Id.* at 2. Then, "USCIS will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal." *Id.* "If USCIS determines that the alien has not met this standard, the alien will be removed." *Id.* But if USCIS determines that the standard is met, it will take one of three actions. First, if "the alien was not previously in proceedings before the Immigration Court, USCIS will refer the matter to the Immigration Court in the first instance." *Id.* Or, second, if "the alien was previously in proceedings before the Immigration Court," the U.S. Immigration and Customs Enforcement (ICE), Office of the Principal Legal Advisor (OPLA) "may file a motion to reopen with the Immigration Court or Board of Immigration Appeals, as appropriate, for further

proceedings for the sole purpose of determining eligibility for protection under [8 U.S.C. § 1231(b)(3)] and CAT for the country of removal." *Id.* Or, third, "ICE may choose to designate another country for removal." *Id.*

On April 18, 2025, the district court certified a class and issued a classwide preliminary injunction. The court certified a class consisting of:

> All individuals who have a final order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceeding as a country to which the individual would be removed.

ECF No. 64 at 23. The court's preliminary injunction provides:

> Defendants must: (1) provide written notice to the alien—and the alien's immigration counsel, if any—of the third country to which the alien may be removed, in a language the alien can understand; (2) provide meaningful opportunity for the alien to raise a fear of return for eligibility for CAT protections; (3) move to reopen the proceedings if the alien demonstrates "reasonable fear"; and (4) if the alien is not found to have demonstrated "reasonable fear," provide meaningful opportunity, and a minimum of 15 days, for that alien to seek to move to reopen immigration proceedings to challenge the potential third-country removal.

ECF No. 64 at 46-47. Defendants now move for an immediate stay of the district court's preliminary injunction.

## **ARGUMENT**

Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal, (2) whether the

movant will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

The district court lacked jurisdiction over this case, misunderstood the merits, and entered overbroad relief. The merits and the equities all favor a stay.

## I.     Defendants are Likely to Prevail on the Merits.

### A. The nationwide injunction is a clear violation of 8 U.S.C. § 1252(f)(1).

The district court's preliminary injunction contains multiple serious legal errors that justify an immediate stay. Most prominently, the district court's nationwide injunction is prohibited by 8 U.S.C. § 1252(f)(1), which provides that:

> "Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to *enjoin or restrain* the operation of the provisions of part IV of this subchapter ... other than with respect to the application of such provisions to an individual alien against whom proceedings ... have been initiated."

8 U.S.C. § 1252(f)(1) (emphasis added). The Supreme Court has held that § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Biden v. Texas*, 597 U.S. 785, 797 (2022) (quoting *Garland v. Aleman Gonzalez*, 596 U.S. 543, 544 (2022)). Section 1231, the provision the district court's order impacts, is one of the specific

7

statutory provisions that § 1252(f)(1) covers. *Aleman Gonzalez*, 596 U.S. at 544-50 (overturning preliminary injunction that enjoined the government from exercising its detention authority under § 1231(a) unless it provided additional procedures not required by statute or regulation). As the Supreme Court held in *Aleman Gonzalez*, to "restrain" means to "check, hold back, or prevent (a person or thing) from some course of action," to "inhibit particular actions," or to "stop (or perhaps compel)" action. 596 U.S. at 549.

Here, the district court's order enjoins Defendants from "removing any alien to a third country, *i.e.*, any country not explicitly provided for on the alien's order of removal," unless and until certain additional procedures are provided. ECF No. 64 at 46. This clearly has the effect of enjoining or restraining DHS from "taking actions to enforce, implement, or otherwise carry out" its statutory authority to remove aliens to third countries pursuant to 8 U.S.C. § 1231(b). Therefore, § 1252(f)(1) explicitly bars such relief. Indeed, as Plaintiffs concede, ECF No. 1 ¶¶ 30-33, the relevant statutes expressly grant DHS the authority to remove individuals to various alternate or third countries. 8 U.S.C. § 1231(b)(1), (b)(2); *see Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005). Thus, an injunction that prevents DHS from exercising its clear statutory authority to effectuate removals to third countries unquestionably prevents the operation of that statute and so constitutes an order "restraining" federal officials. *Aleman Gonzalez*, 596 U.S. at 550; *Hamama v.*

*Adducci*, 912 F.3d 869, 879 (6th Cir. 2018) (holding that injunction violated § 1252(f)(1) because it "created out of thin air a requirement ... that does not exist in the statute). Because § 1252(f)(1) eliminates the district court's authority to issue coercive orders enjoining or restraining DHS's implementation of § 1231(b), the district court lacked jurisdiction to issue an order enjoining DHS's removal authority on a nationwide or classwide basis.

Despite this clear statutory language and binding Supreme Court precedent, the district court nevertheless concluded that § 1252(f)(1) "simply does not apply." ECF No. 64 at 24. The district court reasoned that it could evade § 1252(f)(1)'s clear jurisdictional restriction because "CAT protections were codified in FARRA in 1998," and therefore "CAT protections are not covered by section 1252(f)(1)'s bar [which relates] only to INA provisions as amended in 1996." *Id.* at 25 n.31. The district court seemingly acknowledged that its order would impact the government's operation of the country-of-removal statute covered by § 1252(f)(1) but inexplicably asserted that any such impact would be merely "collateral." *Id.* at 25-26 (citing *Texas v. DHS*, 123 F.4th 186, 209–10 (5th Cir. 2024)).

That statutory sleight of hand defies both logic and common sense.[1] The

---

[1] Additionally, as discussed below, the district court's attempt to use CAT to circumvent § 1252(f)(1) is particularly illogical because the district court clearly lacked jurisdiction to review Defendants' regulatory implementation of CAT or order Defendants to implement CAT via new, judicially-mandated procedures. *See* FARRA § 2242(d).

injunction's effect on a covered provision is not merely "collateral"; by its own terms, it clearly and directly enjoins DHS from executing its third country removal authority under § 1231(b). ECF No. 64 at 46 (requiring Defendants to provide specific mandatory procedures "prior to removing any alien to a third country"). And as *Aleman Gonzalez* makes clear, it is the injunction's effect on the government's operation of the covered provisions that matters, not the framing of the underlying claim. 596 U.S. at 552-54. Regardless of how Plaintiffs—or the district court— framed their claim, the clear effect of the preliminary injunction is to dictate how removal operations under § 1231 are being "carried out"—so it is clearly barred by § 1252(f)(1).

Notably, the district court already correctly determined that it lacks jurisdiction to order classwide relief related to Withholding of Removal under 8 U.S.C. § 1231(b)(3)(A). *See* ECF No. 40 at 8 (noting that the court is "precluded, under 8 U.S.C. § 1252(f)(1), from offering relief as to [§ 1231(b)(3)(A)] beyond the individual Plaintiffs"). The court nevertheless issued its classwide preliminary injunction by premising its order on the availability of relief under CAT, which is not among the provisions covered by § 1252(f)(1). ECF No. 64 at 24. But this is a distinction without a difference because § 1252(f)(1) applies "[r]egardless of the nature of the action or claim." And either way, the subject of the court's injunction is the third country removal statute at § 1231(b). The lower courts may not enjoin or

restrain the operation of § 1231(b) *regardless* of whether the goal is to allow an opportunity to seek relief related to CAT, § 1231(b)(3)(A), or any other provision. It is well-established that a court "must look through such easy evasions as creative labeling and consider the fundamental nature of the claims asserted." *Aguilar v. U.S. Imm. & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 17 (1st Cir. 2007); *see also Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) ("[A] party may not expand a court's jurisdiction by creative pleading."). Because the injunction has the effect of enjoining DHS's operation of § 1231(b) on a nationwide, non-individualized basis, the district court lacked jurisdiction to issue its injunction.

The district court's order illustrates why Congress enacted § 1252(f)(1). As the Supreme Court has recognized, Congress enacted § 1252(f)(1) in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, Div. C, sec. 306(a)(2), § 242(f ), 110 Stat. 3009-611 to 3009-612, which was designed in large measure to protect the removal process from judicial intrusion. *See Reno v. American-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 486 (1999). By providing that "no court (other than the Supreme Court) shall" have the power to grant coercive programmatic relief against the covered statutes, it balances judicial review and the government's ability to effectuate the removal process. *See* H.R. Rep. No. 469, 104th Cong., 2d Sess. Pt. 1, at 161 (1996) (House Report)

("[S]ingle district courts or courts of appeal do not have authority to enjoin procedures established by Congress to reform the process of removing illegal aliens from the U.S."). Congress permissibly chose to bar courts from controlling the government's enforcement of certain immigration statutes until the Supreme Court has spoken on the issue. Even if the district court otherwise had jurisdiction over Plaintiffs' claims (it does not) and was correct on the merits of those claims (it is not), the nationwide preliminary injunction clearly violates § 1252(f)(1). For that reason, it should be immediately stayed pending appeal.

## B. The injunction is a clear violation of the Foreign Affairs Reform and Restructuring Act.

Independently, the preliminary injunction violates Section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), which implements Article 3 of CAT and provides that "[n]otwithstanding any other provision of law, and except as provided [by regulation], *no court shall have jurisdiction to review the regulations adopted to implement this section*, and *nothing in this section shall be construed as providing any court jurisdiction to consider or review* claims raised under the Convention or this section[.]" FARRA § 2242(d) (emphasis added). As discussed more fully below, any judicial review of any claim arising under CAT is available exclusively on an individualized basis "as part of the review of a final order of removal" in the courts of appeals. *See* 8 U.S.C. § 1252(a)(4). But "no court"— and certainly not the district court—has jurisdiction to review DHS's

implementation of CAT. Yet that is precisely what the district court did here by issuing its capacious injunction mandating how CAT must be implemented in the context of third country removal.

Notably, CAT is not self-executing. Its effect, if any, depends on implementation via domestic law. Congress thus worked well within its authority to limit judicial review of CAT regulations and CAT claims. Because the preliminary injunction was issued in direct contravention of Congress' mandate precluding judicial review of CAT implementation, it should be immediately stayed pending appeal.

### C. The injunction also violates several *more* jurisdiction-stripping statutory provisions.

Additionally, the district court lacked jurisdiction to enter its order pursuant to 8 U.S.C. § 1252(a)(4), (5), (b)(9), (g), and § 1231(h).

### 1. Section 1252(g) bars Plaintiffs' claims.

The district court's order clearly prevents Defendants' actions to execute the removal orders of named Plaintiffs and class members, consisting of nearly all aliens with final orders of removal, to a third country until Defendants comply with additional requirements, including providing aliens a "meaningful opportunity" to raise a fear claim and have that fear claim reviewed by the immigration court. ECF No. 64 at 47. But courts of appeals have consistently held that courts are barred by § 1252(g) from adjudicating claims seeking a stay of removal—even temporarily to

assert other claims to relief. *See Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021) ("[W]e do not have jurisdiction to consider 'any' cause or claim brought by an alien arising from the government's decision to execute a removal order. If we held otherwise, any petitioner could frame his or her claim as an attack on the government's authority to execute a removal order rather than its execution of a removal order."); *E.F.L., v. Prim,* 986 F.3d 959, 964-65 (7th Cir. 2021) (rejecting the argument that jurisdiction remained in similar circumstances because petitioner was challenging DHS's legal authority as opposed to its "discretionary decisions"); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020) (observing that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it" and that "[b]oth are covered by the statute") (emphasis in original); *Hamama*, 912 F.3d at 874–77 (vacating district court's injunction staying removal, concluding that § 1252(g) stripped district court of jurisdiction over removal-based claims and remanding with instructions to dismiss those claims); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017) (Section 1252(g) applies to constitutional claims arising from the execution of a final order of removal, and language barring "any

cause or claim" made it "unnecessary for Congress to enumerate every possible cause or claim.").

The district court exercised the exact sort of judicial review that has been rejected by numerous courts of appeals. There is no textual basis for the court's decision "not to construe section 1252(g) to immunize an unlawful practice from judicial review." ECF No. 64 at 21. Contrary to the district court's conclusion, § 1252(g) contains no exception for such claims in district courts regardless of their nature or merit.

Section 1252(g) bars "any cause or claim ... arising from the decision or action by the Attorney General to ... execute removal orders." The statute, by its terms, applies to *any* claim and does not include the limit the district court found to exist. Indeed, courts of appeals across the country have repeatedly rejected such a limitation because it contradicts the statute's plain language. *Rauda*, 55 F.4th at 778; *Camarena*, 988 F.3d at 1274 ("[T]hat statute does not offer any discretion-versus-authority distinction of the sort they claim."); *E.F.L.*, 986 F.3d at 964-65; *Foster v. Townsley*, 243 F.3d 210, 214 (2001); *Tsering v. U.S. Imm. & Customs Enf't.*, 403 F. App'x. 339, 342-43 (10th Cir. 2010).

The district court's reliance on *AADC* is misplaced. *See* ECF No. 64 at 21. "Although the [Supreme] Court [in *AADC*] emphasized the importance of preserving the Attorney General's discretionary functions in the three enumerated categories, it

did not explicitly state that the provision applies *only* to review of discretionary decisions...." *Townsley*, 243 F.3d at 214. Rather, the Court merely made the obvious point that § 1252(g) applies to the government's discretionary decisions regarding the three actions listed in the statute, and it did so because the selective enforcement claim they were examining involved such a discretionary decision. The Court said *nothing* about purported legal challenges to the actions listed in §1252(g), and certainly did not give district courts carte blanche to review those challenges. That is why the Fifth Circuit has outright rejected the district court's instant conclusion and why many other courts of appeal have relied on *AADC* in support of the government's argument. *See Townsley*, 243 F.3d at 214; *E.F.L.*, 986 F.3d at 964-65; *Tazu*, 975 F.3d at 298.

The district court's reliance on *Kong v. United States,* 62 F.4th 608 (1st Cir. 2023), is equally misplaced. ECF No. 64 at 21. There, the alien plaintiff sued under the Federal Tort Claims Act for damages related to his allegedly unlawful detention. *Kong*, 62 F.4th at 617-18. Analyzing § 1252(g)'s "arising from" language, this Court held that § 1252(g) did not bar Kong's claim raising legal challenges to his *detention* because his arrest and detention were collateral to his removal and he did not "challenge the decision to try and execute his removal." *Id.* Unlike Kong's claims, Plaintiffs' claims go to the heart of the removal process; the district court's injunction prohibits DHS from executing Plaintiffs' valid removal orders. They are

not merely "collateral to Defendants' decision to execute Plaintiffs' removal." ECF No. 64 at 22. Therefore, the district court was without jurisdiction to enter its order under § 1252(g).

## 2. Section 1252(a)(5) and (b)(9) bar Plaintiffs' Claims.

The district court also lacked jurisdiction to enter its injunction because of 8 U.S.C. § 1252(a)(5) and (b)(9). Section 1252(b)(9) provides that judicial review of "*all* questions of law and fact" arising from "*any* action taken or proceeding brought to remove an alien from the United States under this subchapter" is available "*only* in judicial review of a final order under this section." 8 U.S.C. § 1252(b)(9) (emphasis added). Section 1252(a)(5) further provides that [n]otwithstanding any other provision of law (statutory or nonstatutory) ... or any other habeas corpus provision ... a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal...."

The First Circuit has noted that § 1252(b)(9)'s "expanse is breathtaking." *Aguilar*, 510 F.3d at 9-12. "Congress's purpose in enacting § 1252(b)(9) is evident"; it was designed to consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial

review of those decisions vested exclusively in the courts of appeals. *Id.* at 9 (citing 8 U.S.C. § 1252(a)(5)).

The named Plaintiffs and class members can, and therefore must, assert a fear of removal to a third country through the administrative process. Some class members, like O.G.C., can move to reopen their proceedings and assert a fear claim regarding removal to a third country via a statutory motion to reopen regardless of whether they are removed to a third country during that process. 8 U.S.C. § 1229a(c)(7) (allowing a motion to reopen within 90 days of a removal order becoming administratively final); *see Perez-Santana v. Holder,* 731 F.3d 50 (1st Cir. 2013) (holding that the post-departure bar does not apply to statutory motions to reopen). Other class members, like D.V.D., M.M., and E.F.D., can move to reopen their proceedings pursuant to the immigration court and Board of Immigration Appeals' (BIA) *sua sponte* authority. 8 C.F.R. § 1003.2(c), 1003.23(b)(1); *see, e.g.*, *Charles v. Garland,* 113 F.4th 20, 23 (1st Cir. 2024) (describing the *sua sponte* motion to reopen process under 8 C.F.R. § 1003.2(c)(2) and providing for review of denials of such motions by the BIA in limited circumstances). They can also seek an emergency stay of removal through the well-trodden administrative process. *See generally* 8 C.F.R. §§ 1003.2(f), 1003.23(b)(v).

The district court held these sections did not bar Plaintiffs' claims because it found the motion to reopen process to be generally insufficient because there was no

guarantee that Plaintiffs would receive administrative review or judicial review prior to removal to a third country. That was error, for several reasons.

First, § 1252(b)(9) bars claims that can be raised through the administrative process without regard to whether the alien can raise that claim before or after their removal. *See Shaboyan v. Holder*, 652 F.3d 988, 990-91 (9th Cir. 2011) (holding that § 1252(b)(9) barred a direct appeal of the BIA's order denying a stay although the alien could be removed absent the stay). That Plaintiffs may have to seek review through the post-removal process Congress delineated is irrelevant to whether § 1252(b)(9) bars the claim, so long as the review remains available from outside the United States. This is consistent with this Court's determination that, at a minimum, § 1252(b)(9) bars claims that can be "raised efficaciously within the administrative proceedings delineated in the INA." *Aguilar,* 510 F3d at 11. Indeed, for many aliens in the class, including O.C.G., the full gamut of administrative procedures remains available even after removal. 8 U.S.C. § 1229a(c)(7); *see Perez-Santana,* 731 F.3d at 50.

Second, the district court failed to account for named Plaintiffs and class members' various paths to administrative and judicial review of their potential removal to a third country. Even if some aliens cannot effectively move to reopen their proceedings to assert a third-country fear prior to their removal, the vast majority of the class can do so, because they are not detained, much less at risk of

imminent removal. Those class members can, and must, be required to seek review through the administrative process.

Third, that some immigration judges have refused to exercise their *sua sponte* motion to reopen authority, *see* ECF No. 64 at 14, does not reflect the legal reality: a *sua sponte* motion to reopen is an appropriate mechanism for the adjudication of Plaintiffs' claims. 8 C.F.R. § 1003.2(c), 1003.23(b)(1). Therefore, Plaintiffs must be required to at least seek that review before bringing their claims in this Court.

### 3. *Plaintiffs' claims are barred by § 1252(a)(4) and 1231(h).*

Finally, the Court's order violates the clear text of 8 U.S.C. §§ 1252(a)(4) and 1231(h), both of which bar review of challenges to third country removal procedures in the district court. Section 1252(a)(4), titled "Claims under the United Nations Convention" provides in no uncertain terms that:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section *shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment*, except as provided in subsection (e). (Emphasis added).[2]

Separately, 8 U.S.C. § 1231(h) provides that "Nothing in this section," which includes statutory provisions governing withholding of removal, "shall be construed

---

[2] Subsection (e) refers to 8 U.S.C. § 1252(e), which governs judicial review of expedited removal orders.

to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." Together, these provisions make clear that only one court—the court of appeals—has jurisdiction over any of Plaintiffs' claims concerning what process, if any, they may be entitled to prior to removal.

Because the district court's order circumvents Congress's decision to require such claims to proceed exclusively in the courts of appeal, the district court's order unquestionably exceeded its authority in clear violation of §§ 1252(a)(4), (a)(5) and (b)(9) as well § 1231(h) and must be immediately stayed.

### D. DHS's Guidance regarding third country removals satisfies any required due process.

Even if the district court had jurisdiction, DHS's new guidance accords with due process. The guidance provides that DHS must, at a minimum, determine whether the third country "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured." ECF No. 43-1 at 1. If it has, that is the end of the inquiry, and the courts may not question that determination. *See*, *e.g.*, *Kiyemba v. Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009) ("Under [the Supreme Court's decision in] *Munaf*, however, the district court may not question the Government's determination that a potential recipient country is not likely to torture a detainee."). If DOS cannot obtain those assurances or does not find them credible, the guidance plainly provides that Plaintiffs will be provided "notice of

where they are being taken and a meaningful opportunity to show that, if taken there, they will likely be subject to persecution, torture, or death" consistent with this Court's order. ECF No. 40 at 5. The guidance provides this process in a manner consistent with Congress's intent to channel all claims related to removal through the administrative process and to preserve DHS's discretion over matters related to the removal process and over the implementation of the CAT. *See* 8 U.S.C. §§ 1231(h), 1252(a)(4), (a)(5), (b)(9); ECF No. 38 at 4-9.

Moreover, DHS's guidance contains similar procedures to those provided elsewhere in the INA and its implementing regulations. In immigration proceedings, a claim under the CAT "shall not be considered further" if the government obtains "[d]iplomatic assurances" that "an alien would not be tortured." 8 C.F.R. § 208.18(c). Similarly, when applying expedited removal, immigration officers must determine whether an alien "indicates an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). If an alien does not manifest such an intention, the alien is "removed from the United States without further hearing or review." *Id.* If the alien does manifest such an intention, the alien receives an interview from an asylum officer. 8 U.S.C. § 1225(b)(1)(B). That the DHS guidance borrows from these tried-and-true concepts illustrates that the guidance comports with due process particularly as applied to the certified class which contains aliens who lack a fear of removal to *any* country. *See Mathews v. Eldridge,* 424 U.S. 319,

321 (1976) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."); *Jennings v. Rodriguez*, 583 U.S. 281, 314 (2018) (noting that a class action may not be the proper vehicle to resolve Due Process claims because of the flexibility inherent in a Due Process analysis).

### E. The Remaining Factors Support a Stay Pending Appeal.

The district court's order enjoining the government, on a nationwide basis, from exercising its statutory authority to effectuate third country removals necessarily imposes irreparable harm on the government and the public interest. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). The district court's nationwide injunction also undermines the Executive Branch's constitutional and statutory authority over immigration and constitutes an "unwarranted judicial interference in the conduct of foreign policy." *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013). An injunction that prevents the Executive Branch from carrying out his broad authority over immigration matters is "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS v. Legalization Assistance Project of L.A. Cnty Fed'n of Lab.*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers). Moreover, "[t]here is always a public interest in prompt execution of removal orders." *Nken*,

556 U.S. at 436. With a single order, a single district court has potentially prevented the execution of an unknown number—perhaps thousands—of pending removal orders and may irreparably harm the Executive's ability to negotiate the removal of aliens to third countries. Accordingly, the district court's erroneous, overbroad preliminary injunction irreparably harms the government and threatens the public interest. The Court should stay it immediately.

# CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay the district court's preliminary injunction pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

ANTHONY P. NICASTRO
Acting Director

ELIANIS N. PEREZ
Assistant Director

MATTHEW P. SEAMON
Senior Litigation Counsel

/s/ *Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Defendants' request to enlarge the word limit by 1,000 words filed on April 22, 2025, because the motion contains 6,129 words. The motion complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Times New Roman typeface.

*/s/ Mary L. Larakers*
MARY L. LARAKERS

## CERTIFICATE OF SERVICE

I, Mary Larakers, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ *Mary L. Larakers*
Mary L. Larakers
Dated: April 22, 2025                Senior Litigation Counsel