No. 25-1393

_____

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

_____

D.V.D. *et al.*,

Plaintiffs-Appellees,

v.

U.S. Department of Homeland Security *et al.*,

Defendants-Appellants.

_____

On Appeal from an Order of the United States District Court
for the District of Massachusetts

_____

**PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-
APPELLANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL
AND IMMEDIATE ADMINISTRATIVE STAY**

_____

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
Northwest Immigrant Rights Project
615 Second Avenue, Suite 400
Seattle, WA 98104

Anwen Hughes
Human Rights First
75 Broad Street, 31st Floor
New York, NY 10004

Trina Realmuto
Kristin Macleod-Ball
Mary Kenney
Tomás Arango
National Immigration Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446
trina@immigrationlitigation.org

*Counsel for Plaintiffs-Appellees*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION………………………………………………  1

II.   BACKGROUND………...................................................................  1

III.   ARGUMENT………………………………………………  3

    A. Plaintiffs Are Likely to Prevail on the Merits………………………..  4

      1. Section 1252(f)(1) Does Not Prohibit the Injunction ……………  4

      2. The District Court Had Jurisdiction to Issue the Injunction………  8

        a. Section 1252(g) Does Not Bar Review………………………..  8

        b. Subsections 1252(a)(5) and (b)(9) Do Not Bar Review………..  12

        c. Subsection 1252(a)(4), FARRA § 2242(d), and Section 1231(h) Are Inapposite…………………………………………  17

      3. DHS's New Memo Does Not Comport with Due Process………...  19

    B.  The Remaining Factors Favor Plaintiffs……………………………  23

IV.   CONCLUSION……………………………………………….........  25

# I. INTRODUCTION

Defendants fail to meet the demanding standard for their emergency motion to stay the District Court's preliminary injunction pending appeal (Mot.). As required by the Due Process Clause, Foreign Affairs Reform Restructuring Act of 1998 (FARRA) and implementing regulations, the District Court properly enjoined Defendants from failing to ensure that Plaintiffs and class members are not deported to countries not identified in their prior removal proceedings (*i.e.*, a third country) where they are likely to be tortured or killed absent meaningful notice and an opportunity to present a fear-based claim.

Plaintiffs are likely to prevail on their claims that Defendants' failure to provide these mandatory procedural protections violates the Due Process Clause, the Immigration and Nationality Act (INA), FARRA, and implementing regulations. The jurisdiction-limiting provisions on which Defendants rely are inapplicable or inapposite. Defendants also cannot show that the stay would cause them substantial injury. Absent the preliminary injunction, Plaintiffs and class members would face torture or death. The Court should deny the motion.

# II. BACKGROUND

On February 25, 2025, two days after an immigration judge (IJ) granted Plaintiff O.C.G.'s application for withholding of removal, protecting him from deportation to Guatemala, DHS deported him to Mexico. DHS did not provide him

notice or an opportunity to present an application for protection based on his experience of being raped and held hostage in Mexico. ECF 1 ¶¶ 78-89; ECF 8-4. Mexican authorities then deported Plaintiff O.C.G. to Guatemala, where he remains in hiding. *Id.* Plaintiff E.D.F. remains in custody at the Plymouth County Detention Center after DHS arrested him for having a final removal order during an enforcement action targeting a different person. ECF 1 ¶¶12, 74-77; ECF 8-3. Plaintiffs D.V.D. and M.M. must report to DHS and remain at risk of third country deportation. ECF 1 ¶¶10-11, 62-73; ECF 8-1; ECF 8-2.

Plaintiffs filed this class action on March 23, 2025, and simultaneously sought a temporary restraining order (TRO) and preliminary injunction. ECF 1; ECF 7. Plaintiffs' complaint challenges Defendants' failure to provide meaningful notice and an opportunity to apply for protection prior to deportation to a third country.[1] The District Court granted a TRO on March 28, 2025. ECF 34; ECF 40. After Defendants moved this Court to stay the TRO, DHS issued a memorandum, entitled Guidance Regarding Third Country Removals (Memo), ECF 43-1, and sought an indicative ruling from the District Court, ECF 43. This Court denied Defendants' motion to stay the TRO on April 7, 2025. *See D.V.D. v. DHS*, No. 25-

---

[1] Plaintiffs do not challenge either the Department of Homeland Security's (DHS) authority to execute Plaintiffs and class members' final removal orders or DHS's authority to designate a new country for removal, *i.e.*, one that was not previously designated in prior removal proceedings.

1311, Order (1st Cir. Apr. 7, 2025).

On April 18, 2025, following additional briefing and hearing, the District Court certified a nationwide class, granted Plaintiffs' motion for a preliminary injunction (PI) in part, and denied as moot Defendants' motion for an indicative ruling. *See* ECF 64, 66. That same day, the District Court also denied Defendants' provisional motion to stay the PI, which they filed two days before the PI issued. ECF 65. The PI does not prevent any third country deportation; rather, it requires that, beforehand, noncitizens and their counsel, if any, must receive written notice of the country to which they will be deported in a language they understand and a meaningful opportunity to assert a claim for protection under the Convention Against Torture (CAT) related to that third country. ECF 64 at 45-47. Upon a noncitizen demonstrating a reasonable fear of deportation to the third country, DHS must move to reopen proceedings to designate the new country and allow an IJ to adjudicate the CAT claim. *Id*. If the noncitizen does not demonstrate reasonable fear, they must have 15 days in which to file a motion to reopen proceedings to challenge the third country removal before they are deported to the third country. *Id*. Defendants now seek to stay that ruling.

### III. ARGUMENT

A stay of a preliminary injunction pending appeal is "not a matter of right;" rather, it is "an 'intrusion into the ordinary processes of administration and judicial

review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citations omitted). To prevail,

Defendants must show a strong likelihood of success on the merits, irreparable

government harm absent a stay, that a stay will not substantially injure Plaintiffs

and class members, and that the public interest favors a stay. *See Hilton v.*

*Braunskill*, 481 U.S. 770, 770-71 (1987); *see also New York v. Trump*, 133 F.4th

51, 66 (1st Cir. 2025) (noting that the first two factors "are the most critical," citing

*Hilton*). Defendants fail to satisfy this demanding standard.

**A.    Plaintiffs Are Likely to Prevail on the Merits**

   **1.    Section 1252(f) Does Not Prohibit the Injunction**

Defendants wrongly contend that § 1252(f)(1) bars the injunction, accusing

the District Court of "a statutory sleight of hand [that] . . . defies logic and common

sense" and "attempt[ing] to use CAT [Convention Against Torture] to circumvent

§ 1252(f)(1)." Mot. at 9 & n.1. But the District Court's conclusion that §

1252(f)(1) "simply does not apply," ECF 64 at 24, is well-supported by both the

statute's plain text and case law.

First, § 1252(f)(1) applies only to specific provisions of the INA—

provisions that do not include FARRA or the right to apply for CAT protection.

Defendants do not dispute that CAT protection falls outside of § 1252(f)(1)

because FARRA was enacted as a separate statute supplemented by its

implementing regulations, 8 C.F.R. §§ 1208.16-1208.18. Importantly, CAT

protections are not in "chapter 4 of title II [of the INA], as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 [IIRIRA]," which contain the only provisions covered by the plain language of § 1252(f)(1). ECF 64 at 25 n.31.[2] Section 1252(f)(1) bars injunctive relief only with respect to the provisions covered by the plain language of § 306(a)(2) of IIRIRA on September 30, 1996, IIRIRA's effective date. Here, FARRA was enacted in October 1998—two years after IIRIRA's effective date—and did not directly amend any provisions of the INA. Instead, FARRA was codified as a Note to 8 U.S.C. § 1231. Thus, neither FARRA nor its implementing regulations are within § 1252(f)(1)'s scope.[3]

---

[2] The codified text of § 1252(f)(1) is identical to the enacted language except for the language which refers to "the provisions of part IV of this subchapter, as amended by [IIRIRA]." The reference to "part IV of this subchapter" in the codified § 1252(f)(1) refers to Part IV of Subchapter II of Chapter 12 of Title 8 of the U.S. Code. However, the text of IIRIRA § 306(a)(2), which enacted § 1252(f)(1), differs from the codified text, likely due to human error in the codification process. *See Galvez v. Jaddou*, 52 F.4th 821, 830-31 (9th Cir. 2022) (applying IIRIRA § 306(a)(2)).

[3] The classwide injunction only affords protection against torture under FARRA and the regulations, not protection against persecution under 8 U.S.C. § 1231(b)(3). DHS's authority to execute removal orders derives from §§ 1231(b)(1) and (b)(2) but that authority is "subject to" the mandatory protections in both § 1231(b)(3), the withholding of removal statute, which protects against persecution, *and* FARRA and the CAT regulations, which protect against torture. Plaintiffs did not request, and the District Court did not order, protection against *persecution* under § 1231(b)(3) because § 1231 is covered by § 1252(f). Critically, "[t]he Executive Branch does not get to propose addition[al]"

Similarly, in *Galvez v. Jaddou*, plaintiffs brought a class action challenge to the delayed adjudication of special immigrant juvenile petitions, the authority for which was enacted by the Trafficking Victims Protection Reauthorization Act (TVPRA) and codified at 8 U.S.C. § 1232(d)(2). 52 F.4th 821 (9th Cir. 2022). The court held that § 1252(f)(1) did not apply because § 1232(d)(2) was not part of INA. At first glance, § 1232(d)(2) appeared to be referenced by § 1252(f)(1). However, the court explained that because the TVPRA was enacted in 2008, twelve years after IIRIRA's effective date, "§ 235(d)(2) of the TVPRA [enacting § 1232(d)(2)] is certainly not a provision of the INA '*as amended by* the [IIRIRA] of 1996' 8 U.S.C. § 1252(f)(1)." *Id.* at 831. "The TVPRA was enacted in 2008; it could not have enacted a law that was amended by the IIRIRA of 1996." *Id*. Thus, the court upheld the classwide injunction. *Id.*; *see also* ECF 64 at 27 (citing cases).

Second, Defendants wrongly asked the District Court and, now, this Court to "go beyond the plain meaning of the statute to imply a bar to actions that collaterally impact covered parts of the INA [namely, § 1231]." ECF 64 at 25; Mot. at 8-12. As numerous courts have held, § 1252(f)(1) does not apply simply because the injunction may *potentially* have a *collateral* impact on a covered provision, such as here, where the injunction may temporarily delay the execution

---

"*uncovered* statutes" like FARRA, that Congress did not include. ECF 64 at 26-27 (quoting *Texas v. U.S. Dep't of Homeland Sec.*, 123 F.4th 186, 210 (5th Cir. 2024)).

of a removal order under § 1231 to afford compliance with statutory, regulatory, and due process protections.

Because CAT protections do not arise from the INA, but rather from FARRA and its implementing regulations, any impact of the injunction on § 1231 is collateral. *See Gonzalez v. ICE*, 975 F.3d 788, 812-15 (9th Cir. 2020) (affirming injunction prohibiting issuance of certain immigration detainers and finding any effect on provisions covered by § 1252(f)(1) was collateral); *Al Otro Lado v. Exec. Off. for Immigr. Review*, 120 F.4th 606, 628 (9th Cir. 2024) ("Even though asylum eligibility may change the outcome of a removal proceeding under a covered provision [of § 1252(f)(1)], such an effect is collateral under our precedents" which "[t]he Supreme Court acknowledged . . . in [*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022)] and left . . . undisturbed."); *Philadelphia Yearly Meeting of Religious Soc'y of Friends v. DHS*, – F. Supp. 3d –, 2025 WL 585768, at *13 (D. Md. Feb. 24, 2025) (same, *quoting Al Otro Lado*, 120 F.4th at 627).

Despite the lower court's admonishment against "put[ting] words into the Supreme Court's mouth," ECF 64 at 26, Defendants continue to insist that § 1252(f)(1) bars "how removal operations under § 1231 are being 'carried out'. . . ." Mot. at 10 (citing *Aleman Gonzales*, 596 U.S. at 552-54). But as the District Court aptly explained:

> [T]hat part of the *Aleman Gonzalez* opinion dealt with an entirely different issue. Indeed, the *Aleman Gonzalez* Court not only explicitly

7

> limited its discussion to the "covered immigration provisions,"
> *Aleman Gonzalez*, 596 U.S. at 552, but suggested in dicta that "a court
> may enjoin the unlawful operation of a provision that is not specified
> in § 1252(f)(1) even if that injunction has some collateral effect on the
> operation of a covered provision." *Id*. at 553 n.4.

ECF 64 at 26 (internal footnote and citations omitted). Finally, Defendants err in

relying on the legislative history of § 1252(f)(1), which merely recites the statute's

text. Mot. at 11-12. The injunction does not prevent DHS from executing final

removal orders, including to third countries. Instead, the injunction simply affords

a "small modicum," ECF 64 at 2, of mandatory procedural protections of notice

and, for any individuals fearing torture in the new proposed country of removal, an

opportunity to be heard on that claim as required by FARRA, its implementing

regulations, and the Due Process Clause.

### 2.     The District Court Had Jurisdiction to Issue the Injunction.

### a.     Section 1252(g) Does Not Bar Review.

Section 1252(g) of § 8 U.S.C. governs jurisdiction over actions "arising

from" three discrete and discretionary actions: decisions or actions "to commence

removal proceedings, adjudicate cases, or execute removal orders." The District

Court correctly concluded that this section is not applicable because Plaintiffs do

not challenge "Defendants' discretionary decisions to execute their removal

orders." ECF 64 at 21. Rather, Plaintiffs challenge DHS's "unlawful practice": the

agency's actions depriving Plaintiffs of their due process and statutory rights to

notice and an opportunity to apply for protection from persecution or torture with respect to any newly designated country of removal. *Id.*; *see also* ECF 1 at ¶¶ 6, 37-52, 102-05, 110, 113-17, 120.

Critically, these protections are mandatory, as required by FARRA and its implementing regulations and the Due Process Clause. Both the Supreme Court and this Court have held that § 1252(g) does not bar challenges to nondiscretionary decisions or actions. *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482, 485, 487 (1999) (holding that § 1252(g) is "narrow[]," "applies only to three discrete actions," was "clearly designed to give some measure of protection to . . . discretionary determinations," and calling it a "discretion-protecting provision");[4] *Kong v. United States*, 62 F.4th 608, 618 (1st Cir. 2023) ("Kong's FTCA claim does not arise from the discretionary decision to execute removal but instead arises from the government's alleged violations of law in arresting Kong without a relevant warrant and in failing to abide by its own regulations."); *Guerra-Casteneda v. U.S.*, 656 F. Supp. 3d 356, 362-63 (D. Mass. 2023) (finding § 1252(g) did not apply because plaintiff's claims arose from the violation of a stay order, not from the execution of a removal order).

---

[4]     Defendants claim that *AADC* did not "explicitly" limit § 1252(g) to discretionary decisions, *see* Mot. at 15-16 (quoting *Foster v. Townsley*, 243 F.3d 210, 214 (5th Cir. 2001), but this disregards the Supreme Court's analysis of the provision's purpose: "to give some measure of protection to . . . discretionary determinations." *AADC*, 535 U.S. at 486.

In *Kong*, this Court held that § 1252(g) did not apply to the plaintiff's damages claim predicated on his post-final-removal-order arrest and re-detention, recognizing that "§ 1252(g) was passed with the understanding that challenges to the legality of a petitioner's detention" were collateral to DHS' decision to execute his removal order and were not covered by the statute. 62 F.4th at 615. Likewise, here, Plaintiffs' claims—challenging "Defendants' authority to effectively depart from the removal orders by designating new countries for removal outside of the immigration proceedings and, in doing so, circumvent Plaintiffs' due-process rights" and the statutory/regulatory scheme, ECF 64 at 21—are separate from, and collateral to, DHS's discretionary authority to execute removal orders.[5]

Minimizing the weight of this binding precedent, Defendants instead rely on inapposite out-of-circuit cases, which involved attempts to limit DHS's authority to execute a removal order pending some future *discretionary* action, not because of any mandatory obligation the agency must first fulfill. Mot. at 13-15. In *Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022), *Tazu v. Att'y Gen.*, 975 F.3d 292, 297, 300 (3d Cir. 2020), and *Hamama v. Adducci*, 912 F.3d 869, 874-77 (6th Cir. 2018), petitioners sought to stay execution of their removal orders to await

---

[5] Defendants err in their effort to cabin *Kong* to the detention and/or FTCA context. *See* Mot. at 16-17. This Court expressly rejected that distinction, finding that "the text of § 1252(g) cannot be interpreted differently depending on [the nature of the claim]." *Kong*, 62 F.4th at 617 (citing *Clark v. Martinez*, 543 U.S. 371, 382 (2005)).

adjudication of motions to reopen removal proceedings, which the Supreme Court has classified as a "well-understood discretionary form[] of review." *Santos-Zacaria v. Garland*, 598 U.S. 411, 427 (2023). *Accord Kong*, 62 F.4th at 618 (distinguishing *Tazu*). In *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021) and *Camarena v. Dir., ICE*, 988 F.3d 1268, 1274 (11th Cir. 2021), petitioners sought stays to await adjudication of other discretionary applications—a petition under the Violence Against Women Act and a provisional unlawful-presence waiver, respectively. Notably, in *Camarena*, the Eleventh Circuit affirmed a precedent holding that § 1252(g) does not bar challenges to the existence of a removal order. *Id*. at 1273 (citing *Madu v. Att'y Gen.*, 470 F.3d 1362 (11th Cir. 2006)).

Defendants' reliance on *Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001), Mot. at 15-16, ignores the Fifth Circuit's subsequent decision in *Flores-Ledezma v. Gonzales*, 415 F.3d 375, 380 (5th Cir. 2005), in which the court held § 1252(g) does not preclude jurisdiction over a challenge to the constitutionality of the statutory scheme, as opposed to a discretionary determination. Furthermore, *Foster* and *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017), were wrongly decided. They conflict with *AADC* and *Kong* because the courts rejected that § 1252(g) is limited to discretionary decisions and both pre-date the Supreme Court's reaffirmance of *AADC*'s "narrow construction of § 1252(g)." *Kong*, 62 F.4th at 613

(citing *Jennings v. Rodriguez*, 583 U.S. 281 (2018)).[6] The District Court properly rejected Defendants' citation to these cases. ECF 64 at 23 n.30.

Defendants claim that § 1252(g) does not contain an express exception for review of "an unlawful practice." Mot. at 15. But that interpretation both contradicts § 1252(g) as interpreted by *AADC* and *Kong* and would leave unlawful Executive practices unchecked by the judiciary. Here, Plaintiffs challenge Defendants' failure to provide mandatory protections required by the statutory and regulatory scheme and Due Process Clause; compliance with the law is not optional. ECF 64 at 20-21. As the District Court recognized, § 1252(g) does not curtail its judicial review, ECF 64 at 21-23, particularly where, as here, the absence of the injunction would subject Plaintiffs and class members to torture and/or death.

### b.    Subsections 1252(a)(5) and (b)(9) Do Not Bar Review.

Subsections 1252(a)(5) and (b)(9) channel judicial review of removal orders via a petition for review to the courts of appeals. As the District Court recognized, however, "actions that do not challenge final orders of removal are not subject to this channeling scheme." ECF 64 at 11. Plaintiffs do not challenge their removal orders; instead, they challenge DHS's failure to provide procedural protections

---

[6]    The Tenth Circuit's unpublished decision in *Tsering v. ICE*, 403 F. App'x 339, 343 (10th Cir. 2010), is similarly misguided as it relies on *Foster* and misreads *AADC*. *See* ECF 64 at 23 n.30.

prior to removal to any third country designated *after* a final removal order. Because the violations at issue occur after removal proceedings are completed, Plaintiffs cannot file petitions for review under § 1252.

The District Court correctly applied Supreme Court and First Circuit precedent holding that § 1252(a)(5) and (b)(9) do not apply to claims that occur *after* removal proceedings are complete. ECF 64 at 11-12. In *Jennings v. Rodriguez*, the Supreme Court rejected an "expansive interpretation" of § 1252(b)(9), finding that it "would lead to staggering results." 583 U.S. 281, 293 (2018). At issue in *Jennings* was the legality of immigration detention, including the meaning of the term "arising from" as used in § 1252(b)(9). *Id.* Noting the same term in § 1252(g), the Supreme Court reiterated that it does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General" but instead, "just those three specific actions themselves." *Id.* at 294. The Court described a variety of hypothetical tort claims that a detained noncitizen might bring and noted that "[t]he 'questions of law and fact' in all those cases could be said to 'aris[e] from' actions taken to remove the [noncitizens] in the sense that the [noncitizens'] injuries would never have occurred if they had not been placed in detention." *Id.* at 293 (quoting § 1252(b)(9)). The Court noted that it "would be absurd" to construe § 1252(b)(9) so broadly. *Id*.

This Court's holding in *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007)

likewise recognizes that § 1252(a)(5) and (b)(9) are limited to claims arising in removal proceedings. In *Aguilar*, the Court concluded that "section 1252(b)(9) is a judicial channeling provision, not a claim-barring one." 510 F.3d at 11. The Court explained that "[w]e thus read the words 'arising from' in section 1252(b)(9) to exclude claims that are independent of, or wholly collateral to, the removal process. Among others, claims that cannot effectively be handled through the available administrative process fall within that purview." *Id.*; *see also Kong*, 62 F.4th at 613-14 (discussing *Aguilar*, 510 F.3d at 7-8, 11). As the District Court explained, "Plaintiffs are no longer in removal proceedings and complain only of actions that post-date their removal proceedings," and thus their "claims do quite the opposite of challenge their orders of removal"—instead, they seek the opportunity to present fear-based claims that arise only *after* Defendants elect to remove them to countries never designated in their removal proceedings. ECF 64 at 13.[7]

The District Court also correctly rejected as "legally insufficient and logistically impossible" Defendants' effort to evade their obligations by asserting that Plaintiffs could instead file motions to reopen as a potential means to access

---

[7]   Defendants' citation to *Aguilar* to support the proposition that § 1252(b)(9) applies to all claims arising from removal proceedings does not advance their position, Mot. at 17-18; rather, it supports Plaintiffs' position since their claims arise after removal proceedings are complete.

judicial review. ECF 64 at 14. Defendants continue to advance this position, Mot. at 18-20, but fail to address a fundamental flaw: absent written advance notice of removal to a particular third country, an individual "has no basis for reopening his immigration case and no merits basis to seek withholding from a hypothetical third country." ECF 64 at 17; *see also* ECF 57 at 13-14. Review via a motion to reopen is simply not an option for any class member who does not receive meaningful notice of third country deportation. To the extent Defendants imply that individuals can file a motion to reopen *after* they have been subjected to third country deportation, *see* Mot. at 19,[8] they ignore that due process, the INA, FARRA, and implementing regulations mandate meaningful notice and opportunity to present fear-based claims *before* any third country deportation and ensuing harm occurs. ECF 1 ¶¶ 105, 110, 114, 120. Moreover, motions to reopen present a plethora of practical barriers, which are magnified for individuals who are pro se, are in detention, and/or have limited English proficiency. These include insufficient time to prepare and file such motions prior to deportation; substantive requirements to attach new evidence, an application for protection, and supporting documentation; time and numeric limitations on motions to reopen; the lack of automatic stays

---

[8] Defendants' sole citation for this proposition is inapposite. Mot. at 19. *Shaboyan v. Holder* holds only that the court of appeals can review a Board of Immigration Appeals (BIA) decision denying a motion to stay removal to the designated country in conjunction with its review of a denied motion to reopen. 652 F.3d 988 (9th Cir. 2011).

associated with such motions; limitations on filing after deportation; and limitations on judicial review. *See* ECF 64 at 14-18.

Defendants also claim that "a *sua sponte* motion to reopen"—a wholly discretionary mechanism under the immigration regulations—"is an appropriate mechanism for the adjudication of Plaintiffs' claims." Mot. at 20. But they ignore the fact that the agency "is not *required*—by regulation or its own decisions—to reopen proceedings sua sponte" even in exceptional situations and that federal courts "have no jurisdiction to review" whether cases "present an exceptional situation warranting" sua sponte reopening. *Charles v. Garland*, 113 F.4th 20, 23 (1st Cir. 2024). Moreover, in many jurisdictions, courts lack jurisdiction to review denials of sua sponte motions to reopen after deportation. *See, e.g.*, *Bolieiro v. Holder*, 731 F.3d 32, 37-38 (1st Cir. 2013) (citing cases); *Matter of Armendarez-Mendez*, 24 I. & N. Dec. 646 (BIA 2008).[9] Thus, Defendants' reliance on motions to reopen is illusory and undermined by the record in this case. ECF 64 at 14-16. The jurisdictional bars in §§ 1252(a)(5) and (b)(9) do not apply.

---

[9] Defendants cite only to the rule permitting post-deportation *statutory* motions to reopen—which covers motions filed within 90 days of a removal order. Mot. at 18 (citing *Perez-Santana v. Holder,* 731 F.3d 50 (1st Cir. 2013)). Even the limited number of class members in that situation face the barriers discussed above. Moreover, those like O. C.G., who have already been subject to *chain refoulement* after a third country deportation would be left in the nonsensical position of seeking reopening to apply for protection from deportation to the country designated in removal proceedings, the precise protection they already received.

### c. Subsection 1252(a)(4), FARRA § 2242(d), and Section 1231(h) Are Inapposite.

The District Court correctly concluded that neither 8 U.S.C. § 1252(a)(4) nor § 2242(d) of FARRA barred its review. ECF 64 at 18-19. Like § 1252(a)(5) and (b)(9), these provisions channel review of CAT claims to the court of appeals in petitions for review. *See, e.g.*, *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020). As the District Court recognized, Plaintiffs claims do not fall within the scope of § 1252(a)(4) or the FARRA limitation because they have arisen *after* the conclusion of proceedings—it is precisely because Plaintiffs are deprived of meaningful notice and the opportunity to submit an individualized application for CAT protection that they are blocked from seeking judicial review under § 1252(a). ECF 64 at 19. This holding is consistent with *Jennings* and *Aguilar*, discussed *supra*. *Id.*; *cf. Compere v. Nielsen*, 358 F. Supp. 3d 170, 177 n.8 (D.N.H. 2019) (finding § 1252(a)(4) "plainly inapplicable" where the petitioner was not seeking review of a denied CAT claim); *O.H.C. v. DHS,* 950 F.3d 177, 186 (3d Cir. 2020) (finding § 1252(a)(4) does not apply "[w]hen a detained [noncitizen] seeks relief that a court of appeals cannot meaningfully provide on petition for review of a final order of removal").

Likewise, FARRA § 2242(d) is inapposite. *See* ECF 64 at 18-19 & n.27. That provision bars "jurisdiction to review the regulations adopted to implement [FARRA § 2242]" and channels jurisdiction "to consider or review" CAT claims

to the courts of appeals on petition for review. Plaintiffs are not seeking review of the CAT regulations or consideration or review of CAT claims. ECF 51 at 9. To the contrary, the District Court issued an order requiring Defendants to *comply with* FARRA and the implementing regulations because Defendants' policy is contrary to those regulations. Defendants provide no authority supporting their contention that the injunction is the equivalent of a challenge to the regulations or a CAT claim. *See Khouzam v. Att'y Gen.*, 549 F.3d 235, 259 n.14 (3d Cir. 2008) (holding that, "[s]ince we find no reason to question the validity of the regulations," § 2242(d) does not apply).

It is also irrelevant that CAT "is not self-executing," Mot. at 13, because it "has been implemented in the United States through FARRA and the subsequent regulations." *Saint Fort v. Ashcroft*, 329 F.3d 191, 202 (1st Cir. 2003); *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 216 (3d Cir. 2003) (same); *see also Nasrallah*, 590 U.S. at 580; ECF 19 at 27.

Finally, Defendants' citation to 8 U.S.C. § 1231(h) is irrelevant, Mot. at 20-21, as the injunction enforces CAT protections, not withholding of removal under § 1231. *See, e.g.*, *Garcia v. Johnson*, No. 14-cv-01775-YGR, 2014 WL 6657591, at *5 n.3 (N.D. Cal. Nov. 21, 2014) (finding claims seeking to enforce CAT regulation fall outside the scope of § 1231(h)). Second, Defendants' argument is foreclosed by *Zadvydas v. Davis*, where the Supreme Court held that § 1231(h)

merely establishes that § 1231 itself does not create a cause of action; it does not render § 1231 unenforceable where another statute permits a challenge to actions that are "without statutory authority." 533 U.S. 678, 688 (2001); *see also Texas v. United States*, 515 F. Supp. 3d 627, 634 (S.D. Tex. 2021) (holding that "§ 1231(h) does not preclude Texas from challenging § 1231(a)(1)(A) under 5 U.S.C. § 706").

### 3. DHS's New Memo Does Not Comport with Due Process.

As the District Court recognized, the law requires that Plaintiffs and class members receive individualized notice and a meaningful opportunity to apply for CAT protection. *See* ECF 64 at 42-44.[10] FARRA and the implementing regulations all prohibit deportations to countries where a noncitizen would likely be tortured or killed. *See Nasrallah*, 590 U.S. at 580 (identifying statutory and treaty sources of that obligation); 8 C.F.R. §§ 1208.16(c), 1208.17, 1208.18; *see also* ECF 49 at 5-7. Absent the injunction in this case, these rights would be meaningless because DHS has failed to provide meaningful notice and an opportunity for Plaintiffs to present claims for protection against torture prior to removal. "Defendants' obligations under CAT and the Due Process Clause require more." ECF 64 at 44; *see also Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (holding that "[t]he fundamental requisite of due process of law is the opportunity to be heard," which includes

---

[10] Defendants admit many of the deficiencies identified by the District Court. *See, e.g.*, Transcript of April 10, 2025 Hearing at 7:21–8:3, 12:7–23; 14:9–16.

"timely and adequate notice" (quotation marks omitted)); *Trump v. J. G. G.*, 604 U.S. -, No. 24A931, 2025 WL 1024097, at *2 (U.S. Apr. 7, 2025) (finding that detainees under the Alien Enemies Act "must be afforded [notice] within a reasonable time and in such a manner as will allow them to actually seek habeas relief . . . before such removal occurs").

The District Court properly concluded that Defendants' new Memo regarding third-country removals does not change this analysis, because it fails to "satisfy due process." ECF 64 at 42 (citing ECF 43-1); *see also* ECF 49. First, it "provides no process whatsoever to individuals who DHS plans to remove to a country from which the United States has received blanket diplomatic assurances." ECF 64 at 42. Defendants ignore the District Court's findings that "blanket assurances" do not provide the "individualized assessment" necessary "under the statutory and regulatory framework" and "offer no protection against either torture by non-state actors or chain refoulement." ECF 64 at 42-43. Their reliance on *Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009), to assert that courts cannot question diplomatic assurances, Mot. at 21, misses the mark; the District Court was not "question[ing] the substance of [any] diplomatic assurances," but was "inquir[ing] into the overall process and whether such assurances, on their own terms, satisfy the Constitution," ECF 64 at 42. Courts may properly do so. *Id.*

(citing *Khouzam*, 549 F.3d at 259).[11]

The District Court correctly concluded that the Memo "provides no process whatsoever to individuals who DHS plans to remove to a country from which the United States has received blanket diplomatic assurances." ECF 64 at 42 (citing ECF 43-1 at 1-2); *see also* ECF 49 at 7-8. Instead, for this group, the Memo "precludes any further review prior to removal." ECF 64 at 43 (citing ECF 43-1 at 1-2). By definition, blanket diplomatic assurances cannot provide the required individualized notice and opportunity to apply for protection. They merely restate a country's general obligations under international human rights law and fail to address *chain refoulement*, including to the country where the individual's removal may be prohibited, as happened to Plaintiff O.C.G. ECF 49 at 7-8. Critically, such assurances are undermined by the State Department's reports documenting torture by state and non-state actors in the countries to which Defendants seek to deport individuals. ECF 49 at 8-11 (addressing human rights abuses documented in the State Department's reports on Mexico, El Salvador, Honduras, Libya, and Rwanda,

---

[11]     Additionally, *Kiyemba* concerned individualized diplomatic assurances, 561 F.3d at 514. Notably, even they are unreliable. *See* ECF 49 at 13-14. In *Khouzam*, where there was an individualized diplomatic assurance, the Third Circuit found that it violated due process because DHS failed to provide advanced notice of the assurance or any opportunity to review or challenge it, namely, the opportunity to develop a record or make rebuttal arguments, and denied the petitioner an individualized determination before an impartial decisionmaker. *Khouzam*, 549 F.3d at 256-59.

countries to which Defendants propose removing class members).[12]

Defendants point to 8 C.F.R. § 208.18(c), allowing for consideration of diplomatic assurances in evaluating a CAT claim. Mot. at 22. But, as the District Court recognized, ECF 64 at 42-43 (citing 8 C.F.R. § 1208.18(c)), that regulation requires an *individualized* diplomatic assurance. *Id.* § 1208.18(c)(1)-(3) (discussing assurances in reference to a singular individual); *see also* ECF 49 at 11-13.[13] This requirement is consistent with 8 C.F.R. § 1208.16(c), requiring IJs to similarly make individualized CAT determinations.[14]

Second, Defendants' policy is also fatally flawed where no diplomatic assurance is obtained. The Memo contains no requirement that individuals receive notice in writing, in a language they understand, or in a time or manner sufficient

---

[12] The Memo also purports to rely on diplomatic assurances for determinations regarding withholding of removal, ECF 43-1 at 1-2, but unlike protection under CAT, there is no regulatory authority permitting the agency to rely on diplomatic assurances in lieu of making a withholding determination.

[13] The regulation's preamble further clarifies that such assurances will seldom occur: "It is anticipated that these cases will be rare." *Regulations Concerning the Convention Against Torture*, 64 Fed. Reg. 8478, 8484 (Feb. 19, 1999).

[14] Moreover, though the regulation indicates that compliance with subsections (c)(1) and (c)(2) precludes further consideration of a CAT claim by an IJ, the BIA, or an asylum officer, *see* 8 C.F.R. § 1208.18(c)(3), it does not limit or eliminate judicial review regarding any such CAT claim. Indeed, a path to judicial review must be provided. *See* ECF 64 at 43 (declaring lack of review problematic because "there can be no right without a remedy"); *see also* 8 U.S.C. § 1252(a)(4); *Nasrallah*, 590 U.S. at 585 ("[Section] 1252(a)(4) now provides for direct review of CAT orders in the courts of appeals."). In contrast, the Memo forecloses access to IJ, BIA, *and* judicial review. ECF 43-1 at 2.

to assert a fear-based claim and does not require notice to counsel. ECF 64 at 46 nn.46 & 47 (addressing meaningful notice). Furthermore, requiring individuals to "affirmatively state[] a fear of removal," absent any indication that they have the right to seek protection from fear, let alone when or how to do so, *see* ECF 43-1 at 2, functionally ensures that people will not receive required protections against persecution and torture. *See* ECF 49 at 14-18 (addressing U.S. obligation to employ procedures that make individuals aware of their right to seek mandatory protection). Requiring individuals to meet a "more likely than not" potential-torture standard—*i.e.*, requiring them to "demonstrate full entitlement to CAT protections at merely the screening stage"—is similarly contrary to law. ECF 64 at 47 n.48; *see also* ECF 49 at 17. This heightened standard is even more unworkable because, under the Memo, screening generally will be conducted within 24 hours of referral, *id*. at 2, rendering it all but impossible for detained individuals to gather and present sufficient evidence to meet it. The Memo also does not create a path to judicial review. ECF 43-1 at 2.

Thus, the District Court correctly determined that Plaintiffs are likely to succeed on the merits.

## B. The Remaining Factors Favor Plaintiffs.

Defendants do not face irreparable harm absent a stay. Instead, the public interest and risk of substantial injury to class members tip sharply in Plaintiffs'

favor. The preliminary injunction does not stop Defendants from executing removals even to third countries—so long as they first provide individuals with notice and a meaningful opportunity to apply for CAT protection. ECF 64 at 46-47. It only prevents Defendants from unlawfully failing to provide such protections; Defendants "cannot suffer harm from an injunction that merely ends an unlawful practice . . . ." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Instead, absent the preliminary injunction, by Defendants' own admission, DHS may immediately deport people to countries where they face torture or death with no individualized notice or opportunity to seek protection. *See* ECF 64 at 1; *see also* ECF 7 at 14-16; ECF 8-1–8-3; 8-8–8-24 (same). This is plainly not in the public interest. *See e.g.*, *Leiva-Perez v. Holder*, 640 F.3d 962, 971 (9th Cir. 2011); *Tesfamichael v. Gonzales*, 411 F.3d 169, 178 (5th Cir. 2005).

Defendants argue that the injunction prevents them from "effectuating statutes." Mot. at 23 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). But far from preventing Defendants from "employ[ing] a duly enacted statute," *id.*, the injunction requires only that DHS act *in accordance with* relevant statutes, regulations, and the Due Process Clause. Nor is the injunction an "unwarranted judicial interference in the conduct of foreign policy," as Defendants claim without explanation. *Id.* (quoting *Kiobel v. Royal Dutch Petroleum*, 569 U.S. 108, 116 (2013)). Unlike *Kiobel*, which involved

claims challenging conduct occurring abroad, the injunction affords due process and statutory protections to individuals within the United States. Similarly, the injunction is not "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." Mot. at 23 (quoting *INS v. Legalization Assistance Project of L.A. Cty Fed'n of Lab.*, 510 U.S. 1301, 1305-06 (1993) (O'Connor, J., in chambers)). Rather, the District Court is appropriately fulfilling its role by serving as a check on the Executive.

## IV.     CONCLUSION

The Court should deny Defendants' motion.

Respectfully submitted,

s/ *Trina Realmuto*

Tomas Arango
Kristin Macleod-Ball
Mary Kenney
Tomás Arango
NATIONAL IMMIGRATION
    LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
NORTHWEST IMMIGRANT
    RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

Anwen Hughes
HUMAN RIGHTS FIRST
75 Broad Street, 31st Floor
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) and Plaintiffs' motion for a commensurate enlargement of the word limit by 1,000 words (filed April 27, 2025), because it contains 6,197 words, excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the type-face requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word for Microsoft 365 in proportionally spaced 14-point Times New Roman font.

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance

## CERTIFICATE OF SERVICE

I, Trina Realmuto, hereby certify that on April 28, 2025, I caused this document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the Court's appellate CM/ECF system. Defendants-Appellants' counsel are registered CM/ECF users and will be served via the Notice of Docket Activity through this Court's CM/ECF system.

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance