No. 25-1393

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

D.V.D., *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. Department of Homeland Security, *et al.*,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Massachusetts

## APPELLANTS' REPLY IN SUPPORT OF EMERGENCY MOTION TO STAY PENDING APPEAL

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW ENSIGN
*Deputy Assistant Attorney General*

ELIANIS N. PEREZ
*Assistant Director*

MATTHEW P. SEAMON
MARY L. LARAKERS
*Senior Litigation Counsel*
U.S. Department of Justice,
Civil Division
Office of Immigration
Litigation
P.O. Box 868,
Ben Franklin Station
Washington, DC 20044

# **INTRODUCTION**

This Court should stay the district court's universal injunction. It is barred by at least *five* jurisdiction-stripping statutes. Congress has forbidden district courts from enjoining the operation of removal statutes (§ 1252(f)(1)); from entertaining challenges to the sufficiency of the Convention Against Torture (CAT) regulations (§ 2242(d)); from hearing claims arising from execution of removal orders (§ 1252(g)); and from reviewing any questions of law or fact arising from removal proceedings (§ 1252(a)(5), (b)(9)). Independently and collectively, those statutes reflect an unmistakable congressional judgment that cases like this do not belong in district court.

Even setting all of that aside, Defendants' policy on third-country removals is more than adequate to respect any constitutional protections Plaintiffs may have. Contrary to their contentions, there is thus no genuine risk that, at least for many class members, they "would face torture or death" (Opp. at 12) without an injunction.

Astonishingly, the district court disregarded *all* of the restrictions on its authority, and entered a nationwide injunction effectively requiring the Government to keep undisputedly removable aliens in the United States indefinitely, based on possible claims they may never assert. The Government is likely to prevail on appeal and will be irreparably harmed in the interim. A stay would simply allow the Executive Branch to properly enforce the federal immigration laws, without all of

1

the additional procedures that a single district judge has imposed.

    A. **The Government is Likely to Prevail on Appeal, as a Matter of Both Jurisdiction and the Merits.**

Most fundamentally, a stay is warranted because the Government is likely to prevail on appeal, as to both jurisdiction and the merits.

**1.** At the threshold, a host of jurisdictional bars foreclose the relief the district court entered here. Plaintiffs try to evade each of those bars, but their arguments are unpersuasive.

*First,* § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). Those statutory provisions specifically include the "implementation and enforcement of the immigration laws governing … *removal of aliens*." *Id.* at 549-50 (emphasis added). Section 1252(f)(1) thus plainly bars the district court's injunction, which compels "federal officials to take or refrain from taking actions" before "carr[ying] out" "removals of aliens" under section 1231. *Id.* Indeed, even Plaintiffs admit that they challenge "DHS's failure to provide procedural protections *prior to removal to any third country*," and that the injunction affords such allegedly "mandatory procedural protections." Opp. 10, 14-15 (emphasis added). Injunctions interfering with execution of removal orders unless

2

additional conditions are satisfied are *precisely* what § 1252(f)(1) prohibits, as the Supreme Court confirmed in *Aleman Gonzalez*.

Plaintiffs respond (at 7-9) that § 1252(f)(1) does not apply because their claims are based on the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA), which they say is not among the provisions covered by § 1252(f)(1). But § 1252(f)(1) applies whenever an order affects the "operation of" provisions it covers, "[r]egardless of the nature of the action or claim." 8 U.S.C. § 1252(f)(1). The Supreme Court rejected Plaintiffs' argument when it explained that "the 'operation of the provisions' [in § 1252(f)(1)] is a reference 'not just to the statute itself *but to the way that it is being carried out.*" *Aleman Gonzalez*, 596 U.S. at 550 (emphasis added) (alteration omitted). Plaintiffs' substantive claims may be rooted in FARRA, but they sought and obtained an injunction against how removal operations are being "carried out"; that is a form of relief that § 1252(f)(1) bars.

Nor does the injunction here merely have "some collateral effect" on removal. Opp. 8 (citation omitted). It *bars* third-country removals absent substantial additional process. Because § 1252(f) and *Aleman Gonzalez* squarely preclude class injunctions against removal operations, the district court's order is impermissible, and Defendants are likely to prevail on their appeal.

*Second*, turning to FARRA, its terms also preclude Plaintiffs' claims and the district court's injunction. Section 2242(d) of FARRA, which implements Article 3

3

of the CAT, provides that "*no court shall have jurisdiction to review the regulations adopted to implement this section*, and *nothing in this section shall be construed as providing any court jurisdiction to consider or review* claims raised under the Convention or this section[.]" FARRA § 2242(d) (emphasis added). Yet that is precisely what the district court did here—effectively determine that DHS's regulations are insufficient to effectuate the Government's obligations under CAT. The court lacked jurisdiction to do that—especially because § 1252(a)(4) channels any remaining "cause or claim under [CAT]" to the courts of appeals as "the sole and exclusive means for judicial review."

Plaintiffs respond that § 2242(d) does not apply because they do not challenge the CAT regulations and the injunction merely requires *compliance* with those regulations. Opp. 18. But that is simply untrue. The district court has prevented DHS from exercising its removal authority unless and until it implements CAT in a *different* way and provides specific additional procedures *beyond* those provided by the current regulations. That is just another way of saying that the current regulations are inadequate.

*Third*, the district court's injunction is manifestly barred by § 1252(g), which eliminates district court jurisdiction over claims arising from execution of removal orders. Once again, that is exactly what the court did here—hear claims on behalf of aliens "arising from … action … to … execute removal orders."

Plaintiffs respond that § 1252(g) "does not bar challenges to nondiscretionary decisions or actions," even those involving execution of removal orders. Opp. 9. But that is not what the statute's plain language says—it strips jurisdiction as to "*any* cause or claim" arising from those actions. 8 U.S.C. § 1252(g) (emphasis added). And, as the Government has already explained, the cases Plaintiffs cite do not hold otherwise; they used the word "discretionary" only to describe the particular facts of those cases, not to limit the statute's textual reach. *See* Opp. 11-12 (citing *Kong v. United States,* 62 F.4th 608, 618 (1st Cir. 2023); *Reno v. AADC*, 525 U.S. 471 482, 485, 487 (1999)); Mot. 16-17 (responding to these citations).[1]

Caselaw in fact supports the Government here. Plaintiffs fail to meaningfully distinguish the many cases holding that § 1252(g) bars legal challenges like this to the execution of removal orders. *See* Opp. 12-13. In each of these cases, plaintiffs claimed that their removal was, at least temporarily, unlawful. Nonetheless, the courts uniformly rejected their claims because § 1252(g) applies to "any cause or claim." *See Rauda v. Jennings*, 55 F.4th 773, 778 (9th Cir. 2022); *Camarena v. Dir., ICE,* 988 F.3d 1268, 1274 (11th Cir. 2021); *E.F.L.*, *v. Prim,* 986 F.3d 959, 964-65 (7th Cir. 2021); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020); *Hamama*

---

[1] Plaintiffs also cite *Flores-Ledezma v. Gonzales,* 415 F.3d 375 (5th Cir. 2005), but that case involved a petition for review of a final removal order, which was properly filed in the Court of Appeals. *See id.* at 379-80. This case, by contrast, was filed in the district court seeking to enjoin the execution of removal orders.

*v. Adducci*, 912 F.3d 869, 874–77 (6th Cir. 2018); *Silva v. United States*, 866 F.3d 938, 941 (8th Cir. 2017). Indeed, in *Hamama* and *Rauda,* the Sixth and Ninth Circuits held that § 1252(g) applied notwithstanding the plaintiffs' claims they may be tortured absent a stay of removal. *Hamama,* 912 F.3d at 874-77; *Rauda*, 55 F.4th at 778. This Court should follow suit, notwithstanding Plaintiffs' claims about the risks they supposedly face.

At bottom, Plaintiffs' claims are no different from those uniformly rejected by other courts of appeals and therefore barred by § 1252(g).

*Fourth and fifth*, Plaintiffs' claims are further barred by §§ 1252(a)(5) and (b)(9). This Court's decision in *Aguilar v. U.S. Immigration & Customs Enf't Div.*, 510 F.3d 1, 11 (1st Cir. 2007), clarified that § 1252(b)(9) bars claims that can be "raised efficaciously within the administrative proceedings delineated in the INA." *Id.* at 11. As the Government has explained, that is the case here, at least for a large portion of the class, since those aliens could file a motion to reopen if they wish to seek relief from removal to particular other countries. Mot. 19. And § 1252(a)(5) directs any permissible judicial review to the courts of appeals, in any event.

Plaintiffs insist, on behalf of the entire class, that the motion to reopen process is insufficient without "written advance notice of removal to a particular third country." Opp. 15. That is not so. If an alien has a legitimate fear of being sent to a particular country, the alien can assert that claim at any time without notice, let alone

6

"written" notice. And, DHS's guidance provides for notice in the absence of diplomatic assurances; therefore, Plaintiffs' objection is meritless as to the members of the class who will receive such notice. The district court's injunction is thus overbroad. Likewise, to the extent that some aliens have limited access to attorneys or "limited English proficiency" or face other barriers (Opp. 15), that is not the type of problem that can be addressed on a class-wide basis. As this Court has warned, aliens cannot dodge the channeling machinery of §1252(b)(9) "simply by draping individual claims in the mantle of a class action." *Aguilar*, 510 F.3d at 16. The district court thus erred by issuing a nationwide injunction without regard to any particular alien's ability to effectively raise their claims through a motion to reopen.

Plaintiffs rely (at 12-14) on *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018), in an effort to narrow § 1252(a)(5) and (b)(9). But *Jennings* held that § 1252(b)(9) does not bar review of claims about *bond hearings* during detention pending removal proceedings. That is a far cry from Plaintiffs' claim that the provision permits their challenge *to the removal process* and permits the district court to impose new requirements *on removal itself*. Nor did *Jennings* disturb this Court's holding about the scope of § 1252(b)(9) in *Aguilar*.

**2.** Even if the district court had jurisdiction, the policy adopted by DHS is constitutionally sufficient as a matter of law.

Importantly, Plaintiffs all have final orders of removal. That means they all already had the opportunity to identify fear claims with respect to any third countries, and to litigate those claims. They have also had the opportunity to move to reopen those proceedings to make any additional fear claims. Due process does not require an additional round of proceedings after the final order of removal issues, *see Carlson v. Landon*, 342 U.S. 524, 537 (1952), especially for members of the class who were never admitted to the United States, *see Dept. of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1982 (2020) (calling Ninth's Circuit's holding that an alien had a due process right to judicial review of his expedited removal order "contrary to more than a century of precedent").

Plaintiffs argue that the DHS policy providing *more* process than is due Plaintiffs is inadequate because, if the Government has received diplomatic assurances that a country will not engage in torture and has found those assurances credible, the alien is not given notice or an opportunity to litigate fear claims. Opp. 20. But, even if they were afforded additional process, courts would ultimately be barred from "question[ing] the Government's determination that a potential recipient country is not likely to torture a detainee," *Kiyemba v. Obama*, 561 F.3d 509 (D.C. Cir. 2009)—the very determination that the Government has already made and the very reason Plaintiffs seek additional process. *See* 8 C.F.R. § 208.18(c). Contrary to Plaintiffs and the district court, nothing in *Kiyemba* or the regulation is limited to

"an *individualized* diplomatic assurance." Opp. 22. Nor would such a limit make sense, if a foreign country has provided (and the Government has deemed credible) an assurance that *no* alien removed to that country would face torture.

Plaintiffs also assert that the DHS policy is inadequate in cases where there is no diplomatic assurance. Opp. 22-23. In these circumstances, due process does not require "notice in writing," "notice to counsel," or additional time to assert a fear claim, because it is perfectly reasonable to expect that, if an alien has a legitimate fear of being removed to a particular country—and a real risk of erroneous deprivation—the alien will assert that fear when told of such a destination. *See Mathews v. Eldridge,* 424 U.S. 319, 321 (1976). The Constitution does not require more process than that. *See id.*

Given the dead-end extra process Plaintiffs seek and the substantial process Plaintiffs have already received, and at least as applied to this broad class of aliens, the Government is likely to succeed on Plaintiffs' due process claim.

### B. The Remaining Factors Favor a Stay.

The district court's nationwide order imposes immediate and irreparable harms on the Government, and the public interest cuts sharply against it. The order bars the execution of an unknown but substantial number of pending removal orders, forcing the Executive to delay the removal of undisputedly removable individuals. The Government—and the public—have a "strong interest in avoiding delay of

9

deportation." *AADC*, 525 U.S. at 495; *see Nken,* 556 U.S. at 436 ("There is always a public interest in prompt execution of removal orders."). The order likewise interferes with, and may irreparably harm, the Executive's ability to negotiate with third countries regarding removal. That represents "an improper intrusion by a federal court into the workings of a coordinate branch of the Government." *INS*, 510 U.S. at 1305-1306 (O'Connor, J., in chambers). Meanwhile, given the policy that DHS has adopted, there is no serious risk to Plaintiffs from a stay.

Plaintiffs' contrary arguments depend on their view of the merits. But in view of the district court's serious errors and the "government's strong interest in the orderly and expeditious management of immigration cases," *Moreta v. Holder,* 723 F.3d 31, 34 (1st Cir. 2013), the equities favor a stay of the injunction pending appeal.

## CONCLUSION

For the foregoing reasons, this Court should grant Defendants' Motion for Stay Pending Appeal.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW ENSIGN
Deputy Assistant Attorney General

ELIANIS N. PEREZ
Assistant Director

MATTHEW P. SEAMON
Senior Litigation Counsel

/s/*Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because the reply contains 2,416 words. The reply complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Times New Roman typeface.

<i>/s/ Mary L. Larakers</i><br>
MARY L. LARAKERS

**CERTIFICATE OF SERVICE**

I, Mary Larakers, Senior Litigation Counsel, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: May 1, 2025

/s/ *Mary L. Larakers*
Mary L. Larakers
Senior Litigation Counsel