**Nos. 25-1393, 25-1631**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

---

**D.V.D.; M.M.; E.F.D.; O.C.G.,**

*Plaintiffs – Appellees,*

**v.**

**U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM,
Secretary of Department of Homeland Security (DHS); PAMELA BONDI,
United States Attorney General; ANTONE MONIZ, Superintendent of the
Plymouth County Correctional Facility,**

*Defendants – Appellants*.

---

**BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM
AS *AMICUS CURIAE* IN SUPPORT OF
DEFENDANTS – APPELLANTS AND REVERSAL**

---

MATT A. CRAPO
CHRISTOPHER J. HAJEC
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
mcrapo@irli.org
(202) 328-7004

Counsel for *Amicus Curiae*
Federation for American Immigration Reform

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1)  For non-governmental corporate parties please list all parent corporations:  None.

2)  For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:  None.

DATED: September 15, 2025              Respectfully submitted,

                                       s/ Matt Crapo

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ............................................................................. ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ................................................1

SUMMARY OF ARGUMENT ..............................................................................2

ARGUMENT .......................................................................................................2

    I.    Plaintiffs fail to show a likelihood of prevailing on the merits of their claim that their removals are unlawful ..................................................................2

    II.    Congress has shielded CAT claims from any judicial review other than review alongside removal orders .................................................................5

CONCLUSION .....................................................................................................9

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Batterton v. Francis*,
432 U.S. 416 (1977)..................................................................................4

*Galvan v. Press*,
347 U.S. 522 (1954)..................................................................................3

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ................................................................7

*Jennings v. Rodriguez*,
583 U.S. 281 (2018)..................................................................................7

*Kapoor v. DeMarco*,
132 F.4th 595 (2d Cir. 2025) ..................................................................8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)..................................................................................5

*Nishimura Ekiu v. United States*,
142 U.S. 651 (1892)..................................................................................3

*Riley v. Bondi*,
145 S. Ct. 2190 (2025)..............................................................................8

*Zadvydas v. Davis*,
533 U.S. 678 (2001)..................................................................................7

**TREATY**

Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or
Punishment (CAT), adopted Dec. 10, 1984, S. Treaty
Doc. No. 20, 100th Cong., 2d Sess. (1988), 1465 U.N.T.S. 85.............................4

ii

## STATUTES

8 U.S.C. § 1182(a) ........................................................................................................3

8 U.S.C. § 1227(a) ........................................................................................................3

8 U.S.C. § 1231(b)(1) ...................................................................................................3

8 U.S.C. § 1231(b)(2) ...................................................................................................3

8 U.S.C. § 1252(a)(4) .............................................................................................5, 6, 9

8 U.S.C. § 1252(a)(5) ....................................................................................................6

8 U.S.C. § 1252(b)(9) ....................................................................................................6

8 U.S.C. § 1252(g) .........................................................................................................6

Foreign Affairs Reform and Restructuring Act of 1998 (FARRA),
    Pub. L. No. 105-277, Div. G, § 2242(b), 112 Stat. 2681-822 ...............................3

FARRA § 2242(d) ..........................................................................................................5

## REGULATIONS

8 C.F.R. § 1208.17(f) ....................................................................................................4

8 C.F.R. § 1208.18(c)(3) ...............................................................................................4

## IDENTITY AND INTEREST OF *AMICUS CURIAE*

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to inform the public about the effects of both unlawful and lawful immigration, and to defend American citizens, American workers, and the nation's environment by limiting overall immigration, enhancing border security, and ending illegal immigration. In short, FAIR seeks to protect all Americans against the substantial harms of mass migration by attaining strongly-enforced, patriotic immigration reform. To that end, FAIR has been involved in more 100 legal cases since 1980, either as a party or as *amicus curiae*, in which it has consistently defended American interests against illegal immigration into the United States.

The decision in this case will likely have a substantial impact on the tools available to dealing efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people in the United States. *Amicus* FAIR therefore has direct and vital interests in defending the regulations governing CAT claims in the context of third-country removals and the jurisdictional bars in the Immigration and Nationality Act.[1]

---

[1]  No counsel for any party authored this brief in whole or in part and no person or entity, other than *amicus curiae*, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

## SUMMARY OF ARGUMENT

Congress entrusted the implementation of the Convention Against Torture (CAT) to the Executive Branch, and Plaintiffs fail to show a likelihood of being able to demonstrate that the Executive, in removing them to countries other than the designated country of removal, did not follow valid regulations implementing that treaty. Because Plaintiffs thus fail to show a sufficient likelihood of success on their claim that their removals are unlawful, the District Court's injunction against their removals should be reversed.

Congress, moreover, has provided for judicial review of CAT claims only if they are raised in a petition for review of a final order of removal. The District Court gave no basis in the statute for concluding that this jurisdictional bar only applies to claims that Plaintiffs could themselves raise in a petition for review. Indeed, that conclusion eviscerates the sweeping nature of the jurisdictional bar, since it would exempt all CAT claims made after an order of removal has become final. Because the District Court thus lacked jurisdiction to issue the injunction below, this Court should reverse.

## ARGUMENT

### I.  Plaintiffs fail to show a likelihood of prevailing on the merits of their claim that their removals are unlawful.

There is no question that the United States has a right inherent in its sovereignty to defend itself from foreign dangers by controlling the admission of

2

aliens. "It is an accepted maxim of international law that every sovereign nation has the power, as inherent in sovereignty, and essential to self-preservation, to forbid the entrance of foreigners within its dominions, or to admit them only in such cases and upon such conditions as it may see fit to prescribe." *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892); *see also Galvan v. Press*, 347 U.S. 522, 531 (1954) ("Policies pertaining to the entry of aliens and their right to remain here are . . . entrusted exclusively to Congress . . . ."). Exercising this sovereign prerogative, Congress has enacted a comprehensive and detailed statutory scheme regulating immigration, the purpose of which is to prevent and deter illegal immigration and provide for the prompt removal of certain aliens.[2]

Congress has authorized the Executive Branch to carry out "third country removals," that is, to remove aliens to countries other than the designated country of removal. *See* 8 U.S.C. § 1231(b)(1), (2). In so authorizing the Executive, Congress did not set forth any procedural requirements for third country removals.

Instead, Congress entrusted the Executive Branch with ensuring that no alien will be removed to a country in which the alien will be tortured. *See* Foreign Affairs

---

[2] Congress has specified numerous classes of aliens who are removable from the United States, such as aliens who enter illegally, commit certain crimes, violate the terms of their status (visa overstays), obtain admission through fraud or misrepresentation, vote unlawfully, become a public charge, and whose work would undermine wages or working conditions of American workers. *See generally* 8 U.S.C. §§ 1182(a) (defining inadmissible aliens) and 1227(a) (defining deportable aliens).

Reform and Restructuring Act of 1998 (FARRA), Pub. L. No. 105-277, Div. G, § 2242(b), 112 Stat. 2681-822 (directing "the heads of the appropriate agencies" to "prescribe regulations to implement the obligations of the United States under Article 3 of the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment, subject to any reservations, understandings, declarations, and provisos contained in the United States Senate resolution of ratification of the Convention"); *see also* Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), *adopted* Dec. 10, 1984, S. Treaty Doc. No. 20, 100th Cong., 2d Sess. (1988), 1465 U.N.T.S. 85.

Such regulations have been prescribed. In them, for example, the right to protection under CAT is subject to termination or pretermission where reliable diplomatic assurances against torture render CAT protection unnecessary. 8 C.F.R. §§ 1208.17(f) (termination of CAT protection); 1208.18(c)(3) (pretermission of pending CAT claims). The District Court has given no reason to believe that these regulations fail to implement either CAT itself or FARRA, and thus no reason to believe that these regulations lack the force of law. *See, e.g., Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) (explaining that substantive regulations implementing a statute have the force and effect of law). As for the District Court's claim that any diplomatic assurances disposing of CAT claims have to be individualized, Appx.

514-15 (ECF Doc. 64 at 42-43), that is an add-on to the regulation for which the District Court provides no basis in either the treaty or the statute.

Nor does the District Court give any reason to believe that these regulations were not followed here. Undeterred, the District Court entered an injunction prohibiting the government from exercising its statutory authority to remove an alien to a third country without satisfying certain procedures, devised by the District Court, and departing from those prescribed by the Executive at the direction of Congress, to assess any potential CAT claims. Because Plaintiffs lack any likelihood of being able to show that this injunction was based on any violation of law or regulation, the Court should reverse the District Court and vacate the injunction.

## II. Congress has shielded CAT claims from any judicial review other than review alongside removal orders.

In any event, Congress has deprived the District Court of jurisdiction to enter the preliminary injunction.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). Congress has made clear that judicial review of CAT claims is only available "as part of the review of a final order of removal" pursuant to 8 U.S.C. § 1252. FARRA, § 2242(d) (codified as a note to 8 U.S.C. § 1231); *see also* 8 U.S.C. § 1252(a)(4) ("[A] petition for review filed with an appropriate court

of appeals in accordance with this section shall be the *sole and exclusive* means for judicial review of any cause or claim under the [CAT] ….") (emphasis added). Indeed, the jurisdictional bar established by Congress applies "[n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision and sections 1361 and 1651 of such title …." 8 U.S.C. § 1252(a)(4). Thus, Congress sought to protect the Executive's implementation of CAT from judicial review except only insofar as review is permitted alongside review of a final order of removal in an appropriate court of appeals.

In addition, Congress has barred district courts from reviewing legal or constitutional claims relating to actions taken to remove aliens from the United States. 8 U.S.C. § 1252(g) ("Except as provided in this section … no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [government] to … execute removal orders against any alien under this chapter."). To prevent piecemeal litigation and streamline the removal process, Congress requires aliens to seek judicial review of all removal-related claims in a "petition for review filed with an appropriate court of appeals." 8 U.S.C. § 1252(a)(5). Further, 8 U.S.C. § 1252(b)(9) provides that, if a legal or constitutional claim "aris[es] from any action taken or proceeding brought to remove an alien," then "[j]udicial review of all questions of law and fact . . . shall be available

6

*only* in judicial review of a final order" of removal (emphasis added). Because judicial review of a final order of removal is available only in the courts of appeals, district courts cannot review these "arising from" claims. *See*, *e.g.*, *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the PFR process." (emphasis in original) (citation omitted)); *id.* (describing § 1252(b)(9) as "breathtaking" in scope and "vise-like" in grip, such that it "swallows up virtually all claims that are tied to removal proceedings"); *but see Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (reading "arising from" in section 1252(b)(9) as not encompassing claims related to prolonged detention pending administrative removal proceedings).

Plaintiffs are not challenging indefinite or prolonged detention pending removal.[3] Instead, Plaintiffs sought and the District Court granted a preliminary injunction providing procedural protections beyond those set forth in the regulations implementing CAT. In asserting jurisdiction, the District Court claimed, without a basis in the statute, that 8 U.S.C. § 1252(a)(4) only applies to matters that Plaintiffs could themselves raise in a petition for review under section 1252. *See* Appx. 491

---

[3] The Supreme Court's decision in *Zadvydas v. Davis* precludes the government from detaining Plaintiffs indefinitely pending execution of a final removal order. 533 U.S. 678, 699 (2001) ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

(ECF Doc. 64 at 19). That reading of the jurisdictional bar, of course, eviscerates its sweeping application, noted above, since it would preserve jurisdiction in district courts to hear CAT claims after an order of removal has become final. *See*, *e.g.*, *Kapoor v. DeMarco*, 132 F.4th 595, 608 (2d Cir. 2025) (holding that section 1252(a)(4) bars all habeas jurisdiction over CAT claims with narrow, non-relevant exceptions).

The Supreme Court's recent decision in *Riley v. Bondi*, 145 S. Ct. 2190 (2025), buttresses the conclusion that the District Court lacks jurisdiction here. In *Riley*, the government suggested that the Court should deem an underlying order of removal "final" only after ongoing withholding-only proceedings (CAT claims) have concluded because the alien would otherwise "be deprived of any judicial review" of a CAT claim denial. *Id.* at 2200. The Court rejected this concern, stating that it "must nevertheless follow the statutory text and [its] prior precedents." *Id.* Although the Court ultimately concluded that the 30-day deadline for filing a petition for review is not jurisdictional, *id.* at 2202-03, it made clear that concerns about depriving an alien of judicial review cannot overcome statutory text and binding precedent. Here, Congress quite plainly precluded judicial review of CAT claims except those raised in a petition for review of a final order of removal. Thus, that Plaintiffs now lack the opportunity to seek review of their now-final orders of removal means that judicial review is barred, not that it is available.

8

Because Plaintiffs' CAT claims were not raised in "a petition for review filed with an appropriate court of appeals in accordance with [section 1252]," 8 U.S.C. § 1252(a)(4), the jurisdictional bar applies, and the District Court lacked jurisdiction to review Plaintiffs' CAT claims. Accordingly, this Court should reverse the District Court's order and vacate the preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court should reverse the District Court and vacate the injunction.

Dated: September 15, 2025                 Respectfully submitted,

                                          /s/ Matt Crapo
                                          MATT A. CRAPO
                                          CHRISTOPHER J. HAJEC
                                          Federation for American Immigration Reform
                                          25 Massachusetts Ave., NW, Suite 330
                                          Washington, DC 20001
                                          mcrapo@irli.org
                                          (202) 328-7004

                                          Counsel for *Amicus Curiae*
                                          Federation for American Immigration Reform

## CERTIFICATE OF COMPLIANCE

1.      The foregoing brief complies with the type-volume limitation of FED. FED. R. APP. P. 29(a)(5) because:

This brief contains 2,054 words, including footnotes, but excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

DATED: September 15, 2025      Respectfully submitted,

s/ Matt Crapo

**CERTIFICATE OF SERVICE**

I certify that on September 15, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

s/ Matt Crapo