Nos. 25-1393, 25-1631

_____

UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT
_____

D.V.D. *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. Department of Homeland Security *et al.*,

*Defendants-Appellants*.

_____

On Appeal from an Order of the United States District Court
for the District of Massachusetts

_____

**PLAINTIFFS-APPELLEES' REPLY IN SUPPORT OF REMAND IN LIGHT OF THE DISTRICT COURT'S INDICATIVE RULING TO DISSOLVE THE PRELIMINARY INJUNCTION AGAINST DEFENDANTS**

_____

Matt Adams
Leila Kang
Aaron Korthuis
Glenda M. Aldana Madrid
Northwest Immigrant Rights Project
 615 Second Avenue, Suite 400
 Seattle, WA 98104

Anwen Hughes
Human Rights First
75 Broad Street, 31st Floor
New York, NY 10004

Trina Realmuto
Kristin Macleod-Ball
Mary Kenney
 National Immigration
  Litigation Alliance
10 Griggs Terrace
Brookline, MA 02446

*Counsel for Plaintiffs-Appellees*

i

## TABLE OF CONTENTS

                                                                                     **Page**

I.    INTRODUCTION………………………………………………………… 1

II.   BACKGROUND................................................................................... 2

      A. The Preliminary Injunction………………………............................. 2

      B. The Supreme Court's Stay Ruling…………………….................. 3

      C. The District Court's Indicative Ruling……………………........... 4

      D. Ongoing, Severe Harm to Class Members…………………………... 4

III.  ARGUMENT…………………………………………………………… 5

      A. Remand Will Not Change the Status Quo Pending Merits Adjudication. ………………….................................................... 5

      B. Fairness and Judicial Efficiency Favor Remand to Dissolve the PI.… 8

      C. Any Prejudice to Defendants Pales in Comparison to the Ongoing Imminent Harm Faced by Plaintiffs……………………………. 11

IV.  CONCLUSION…………………………………………………......... 12

## I. INTRODUCTION

Remand for dissolution of the preliminary injunction (PI) is warranted because the Supreme Court's June 23, 2025, ruling rendered the PI inoperable through *not only* the disposition of the instant appeal, but *also* through the Supreme Court's final judgment on any timely filed petition for a writ of certiorari. Defendants' efforts to keep in effect and defend an inoperable injunction against them while the policy challenged in the underlying litigation indisputably imposes ongoing irreparable harm on Plaintiffs and class members (Plaintiffs) is a waste of judicial time and resources. As the District Court recognized, *see* Dkt. 00118334126, Ex. A at 3, this appeal may be resolved on a jurisdictional provision (8 U.S.C. §1252(f)) applicable *only* to injunctive relief. Meanwhile, Defendants have sought to stay adjudication of Plaintiffs' motion for partial summary judgment on three declaratory relief and Administrative Procedure Act (APA) claims, Dist. Ct. Dkt. 206, even though adjudication ultimately could resolve these claims before any Supreme Court ruling on the PI.

Plaintiffs assert in their partial summary judgment motion that they are entitled to meaningful notice and an opportunity to present fear-based claims prior to deportation to a third country where they face persecution, torture, or death. Until these claims are resolved on a final judgment, Defendants will continue deporting class members to third countries without these safeguards pursuant to the

Department of Homeland Security's (DHS) unlawful policy. Under that policy, DHS has deported class members to countries, including El Salvador, South Sudan, Eswatini, and Ghana, where they have been detained by armed guards, largely incommunicado, and some have been forcibly repatriated to countries where they already have proven they will be persecuted and/or tortured.

Plaintiffs, who originally sought protection through the now-inoperable PI, should be permitted to abandon that futile litigation and proceed with presenting their case. Nothing in Defendants' opposition (Opp.) counsels otherwise.

## II.  BACKGROUND

### A.  The Preliminary Injunction

Filed in March 2025, this case challenges Defendants' policy or practice of removing noncitizens to third countries without providing meaningful notice or an opportunity to seek protection from persecution and torture under the Immigration and Nationality Act, the Convention Against Torture (CAT), and related statutory and regulatory provisions. Appx. 001-038. Plaintiffs concurrently filed motions for class certification, a temporary restraining order (TRO), and a PI. Dist. Ct. Dkts. 5-7. The District Court issued a TRO on March 28. Appx. 115.

On April 18, the District Court certified a nationwide class and issued a classwide PI requiring that, prior to any third-country removal, Defendants provide class members (and their counsel, if any) written notice of the country of removal

in a language the noncitizen understands and a meaningful opportunity to assert a CAT claim as to that country. Appx. 518-519.

## B.    The Supreme Court's Stay Ruling

On April 22, Defendants filed an interlocutory appeal of the PI and an emergency stay motion. Dkts. 00118275552, 00118275679. On May 16, this Court denied that motion, noting "concerns regarding the continuing application of [DHS's] March 30 Guidance," [1] as well as "the irreparable harm that will result from wrongful removals in this context." Order at 1-2, *D.V.D. v. DHS*, No. 25-1393 (1st Cir. May 16, 2025).

Defendants then filed an emergency stay application with the Supreme Court. Appellants' Stay App., *DHS v. D.V.D.*, 145 S. Ct. 2153 (2025). On June 23, the Court stayed the PI pending disposition of this appeal *and* any timely filed certiorari petition, specifying that "'[i]n the event certiorari is granted, the stay shall terminate upon the sending down of the judgment of the Court." Appx. 821.[2]

---

[1]    On March 30, 2025, DHS issued "Guidance Regarding Third Country Removals," Appx. 119-21 (March 30 Memo), setting out procedures related to third-country removals of individuals with final removal orders under 8 U.S.C. §§ 1229a, 1231(a)(5), or 1228(b). On July 9, U.S. Immigration and Customs Enforcement (ICE) issued guidance implementing the March 30 Memo. *See* Dist. Ct. Dkt. 190-1 (July 9 Guidance).

[2]    The Court also clarified that its ruling applied to the order remedying Defendants' violation of the PI by deporting eight class members to South Sudan. *DHS v. D.V.D.*, No. 24A1153, 2025 WL 1832186, at *1 (U.S. July 3, 2024).

3

### C. The District Court's Indicative Ruling

On August 28, the District Court granted Plaintiffs' motion for an indicative ruling, stating that it would dissolve the PI should this Court remand for that purpose, finding it an "easy decision" because the Supreme Court's stay order constituted a "significant" "change[] in 'decisional law.'" Dkt. 00118334126, Ex. A at 2 (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).

On August 29, Plaintiffs notified this Court of the District Court's ruling. Because the Court treated the notification as a motion, Plaintiffs also filed their motion for an indicative ruling arguing for dissolution. Dkt. 00118334126, Ex. B.

### D. Ongoing, Severe Harm to Class Members

Since the Supreme Court's ruling, class members have been removed to third countries without any notice and then held in deplorable conditions, including solitary confinement, and denied access to counsel. *See, e.g.*, Amnesty International, *South Sudan: End Two Deportees' Arbitrary Detention* (Sept. 9, 2025); Gerald Imray, *Lawyers for 5 Men Deported to an African Prison Accuse Trump's Program of Denying Them Due Process*, Associated Press (Sept. 2, 2025); Daphne Psaledakis & George Obulutsa, *Rwanda Received Migrants Deported from the U.S. Earlier This Month*, Reuters (Aug. 28, 2025); Gerald Imray, *Men Deported by U.S. to Eswatini in Africa Will Be Held in Solitary Confinement for Undetermined Time*, PBS (Jul. 18, 2025); Angeline McCall, *Wife*

4

*Shares Family Impact after Cuban Husband Deported to Mexico,* 9News (Jul. 20, 2025).

Recently, class members were immediately deported from a third country to the countries *from which they won protection from removal* after having demonstrated persecution or torture there, *see, e.g.*, TRO Motion, Dkt. 2-1, *D.A. v. Noem*, No. 1:25-cv-03135 (D.D.C., filed Sept. 12, 2025); *see also* Camilo Montoya-Galvez, *Judge Says U.S. Trying to Do "End-Run" Around Legal Protections with Deportations to Ghana*, CBS News (Sept. 13, 2025).

### III. ARGUMENT

**A. Remand Will Not Change the Status Quo Pending Merits Adjudication.**

The Supreme Court's ruling established the status quo pending merits adjudication. Contrary to Defendants' claim, Opp. 7, Plaintiffs do not seek to evade the status quo—rather, they seek to avoid further delay to resolution of their claims because of the severe harm class members suffer under the status quo.

Critically, the Supreme Court's ruling concerned only classwide *preliminary injunctive* relief, not a final merits judgment. By seeking dissolution of a PI that no longer serves its purpose, Plaintiffs have adapted to the significant change in the legal landscape to conserve judicial and party resources to move toward definitive resolution of their claims.

Prospective application of the PI is "no longer equitable" because of "a

significant change either in factual conditions or in law," warranting dissolution. *Agostini*, 521 U.S. at 215 (quoting Fed. R. App. P. 60(b)(5); *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)); *see* Dkt. 00118334126, Ex. B at 5-8. The Supreme Court's ruling constitutes a significant factual and legal change rendering the injunction inoperable pending final appellate review. Compliance is "unworkable" because the ruling amounts to an "unforeseen obstacle" that has effectively nullified the *interim* protection the PI was designed to provide. *Rufo*, 502 U.S. at 384. Moreover, "the public interest" is not served by needless litigation on preliminary relief that no longer provides any preliminary relief. *Id.*[3] The District Court agreed the Supreme Court's ruling constituted a significant change in the law, but for different reasons. *See* Dkt. 00118334126, Ex. A at 2-3 (declaring the ruling "presumably" was based on a finding that Defendants demonstrated they likely would succeed on the merits, thereby constituting "decisional law" meriting dissolution). Regardless of which rationale prevails, the ruling created significant change.

Defendants broadly dispute the significance of the ruling, Opp. 5-7, but do not dispute that it has rendered the PI inoperable. Moreover, they completely

---

[3] Because Plaintiffs seek dissolution of the PI they sought, this is not "the ordinary case" where the moving party must demonstrate an error in the PI entered against them. *Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp.*, 15 F.3d 1222, 1225 (1st Cir. 1994).

6

disregard the dire situation class members face since DHS' now-unchecked policy took effect. *See supra* Section II.D. (harm), n.1 (policy).

Furthermore, Defendants ignore the role of 8 U.S.C. § 1252(f)(1) in their appeal, *see* Dkt. 00118334126, Ex. B at 10-11; *id.* at 3; *D.V.D.*, Appx. 834 (Sotomayor, J., dissenting) ("Only one jurisdictional objection remains with any force[:] . . . §1252(f)(1) . . . ."). Indeed, in this Court's May 16 order denying Defendants' emergency motion to stay the PI, this Court instructed the parties to specifically brief three questions *focused on the application of 8 U.S.C. § 1252(f)*. Order. Through dissolution of the PI and expedited resolution of the merits, Plaintiffs seek to ameliorate further irreparable harm. The protections Plaintiffs seek are mandatory and the denial of them is unlawful.[4]

Thus, the "real—and *only*—basis for Plaintiffs' motion" to dissolve the PI, Opp. 7, is to afford Plaintiffs protection from harm. Accordingly, Plaintiffs have moved for expedited partial summary judgment. *See* Dist. Ct. Dkts. 193, 195. Doing so is not an attempt to evade the Supreme Court's ruling, which said nothing about Plaintiffs' ability to seek final judgment. *See* Appx. 821. Moreover, any relief class members may obtain through a favorable declaratory judgment ruling or individual actions is not barred by the Court's order, which stayed only

---

[4] *See, e.g.*, *Ibarra-Perez v. United States*, No. 24-631, ---F.4th---, 2025 WL 2461663 (9th Cir. 2025); *Nguyen v. Scott*, No. 2:25-cv-01398, ---F. Supp. 3d---, 2025 WL 2419288 (W.D. Wash. 2025).

7

classwide PI relief. *See Brito v. Garland*, 22 F.4th 240, 251 (1st Cir. 2021) ("[W]hile declaratory relief can sometimes have much the same practical effect as injunctive relief, it differs legally and materially." (quotation omitted)).[5] Defendants' insistence on litigating an inoperable PI interferes with the speedy final resolution of critical merits claims that may provide Plaintiffs protection from removal to countries where their lives are at risk.

### B. Fairness and Judicial Efficiency Favor Remand to Dissolve the PI.

With each passing month without final adjudication of Plaintiffs' partial summary judgement motion seeking declaratory and APA relief, Defendants are deporting class members to countries to which they have no connection and where they fear persecution and torture—including chain *refoulement* to countries from which the class members have obtained protection—without sufficient process. Moreover, Defendants' own actions in amending their appeal have further delayed briefing before this Court.

Litigating the PI appeal serves no purpose for the party that *sought* the PI, as Defendants are free to continue deporting class members to third countries without notice or an opportunity to present fear-based claims. As a result of this grave and

---

[5] Defendants' motion to stay proceedings below pending resolution of this appeal, Dist. Ct. Dkt. 206, threatens to further delay any final judgment affording Plaintiffs protection from unlawful removals.

ongoing harm, *see supra* Section II.D, Plaintiffs seek to ensure that the final merits of their claims for declaratory and APA relief are expeditiously decided to protect against these unlawful practices. *See, e.g.*, *Sanchez v. Bondi*, No. 1:25-cv-02287-CNS, 2025 WL 2550646, at *3 (D. Colo. Aug. 20, 2025) (denying relief because of petitioner's status as a *D.V.D.* class member and citing cases); Dist. Ct. Dkt. 210-1 at 1 (denying motion to reopen, in part because the instant case is "underway"); *cf.* Opp. 11-12 (asserting that class members' claims must be resolved through the instant case).

Judicial efficiency favors remand. Because Defendants elected to file a second PI appeal 2.5 months after their first one, briefing only began last week. *See* Dkt. No. 00118320637. Moreover, Defendants' concurrently-filed brief, cited as the sole evidence that relevant issues "are already being litigated and resolved," Opp. 9, was filed long after Plaintiffs filed their indicative ruling motion—and, indeed, a week after the motion was granted. Defendants elected not to move to postpone briefing until after this motion was decided.

Remand would ensure that the courts consider only issues related to the final adjudication of Plaintiffs' claims, not the inoperative PI. Were this appeal to proceed, the parties likely would spend months litigating before this Court and the Supreme Court only to potentially receive a decision turning on whether § 1252(f)(1) permits preliminary relief, an issue that has *no* bearing on the final

9

resolution of Plaintiffs' claims. *See* Appx. 831-834 (Sotomayor, J., dissenting) (describing the majority of Defendants' jurisdictional arguments as "absurd" and explaining that only their argument regarding § 1252(f)(1) "remains with any force"); *see also* Opening Br. 23-31 (arguing that § 1252(f)(1) bars the PI as the lead—and lengthiest—jurisdictional argument).[6] Thus, the parties would then start anew, causing further substantial delay before the final resolution of Plaintiffs' summary judgment claims. Plaintiffs should be permitted to abandon their request for a PI that has been rendered inoperative and move towards a final judgment on the claims that are critical to the safety of class members. Again, Plaintiffs seek to ensure that all jurisdictional issues relevant to the merits of their declaratory and APA relief claims—and, indeed, all parts of those claims—come before the courts as promptly as possible via the partial summary judgment motion that is *certain* to resolve them. *Compare* Dist. Ct. Dkts. 193-195 (Plaintiffs' motions seeking partial summary judgment and an expedited schedule), *with* Dist. Ct. Dkt. 206 (Defendants' motion seeking to stay proceedings).

---

[6] The § 1252(f)(1) arguments and some additional jurisdictional arguments are specific to Plaintiffs' rights related to CAT protections. Appellants' Br. at 32-35. Resolution would not resolve Plaintiffs' claims related to persecution under the withholding statute, 8 U.S.C. § 1231(b)(3), which is covered by their partial summary judgment motion.

### C. Any Prejudice to Defendants Pales in Comparison to the Ongoing Imminent Harm Faced by Plaintiffs.

While Plaintiffs continue to face third-country removals to countries where their lives are at risk, *see supra* Section II.D, Defendants complain of the prejudice *they* face by virtue of the resources they have spent on PI litigation. Opp. 12-13. Yet, Defendants chose not to move to postpone briefing this appeal pending a decision on Plaintiffs' indicative ruling motion. Moreover, they fail to appreciate that ongoing PI litigation would further expend *their* resources too. Furthermore, any prejudice from the expenditure of resources does not compare to Plaintiffs' harm where their *lives* are at stake. *See, e.g.*, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 449 (1987) ("[Deportation] is all the more replete with danger when the [noncitizen] makes a claim that he or she will be subject to death or persecution [upon removal]."); *Nken v. Holder*, 556 U.S. 418, 436 (2009) (recognizing public interest in "preventing [noncitizens] from being wrongfully removed, particularly to countries where they are likely to face substantial harm").

Defendants aver that a decision on their jurisdictional arguments "carr[ies] consequences for Plaintiffs' ongoing allegations of pre-stay noncompliance with the [PI]." Opp. 13. But pending below is only discovery related to Defendants' violation of the TRO. *See* Dist. Ct. Dkt. 202 at 3-6. "Violations of an order are punishable as criminal contempt even though the order is set aside on appeal, or though the basic action has become moot," *see United States v. United Mine*

11

*Workers of Am.*, 330 U.S. 258, 294 (1947) (citation and footnote omitted); *In re Grand Jury Proceedings*, 875 F.2d 927, 935 (1st Cir. 1989). Thus, while the District Court may address noncompliance with the TRO, that question does not impact dissolution of the PI.

## IV. CONCLUSION

The Court should remand for dissolution of the PI.

Respectfully submitted,

s/ *Trina Realmuto*
Tomas Arango
Kristin Macleod-Ball
Mary Kenney
NATIONAL IMMIGRATION
    LITIGATION ALLIANCE
10 Griggs Terrace
Brookline, MA, 02446
(617) 819-4447
trina@immigrationlitigation.org

Anwen Hughes*
HUMAN RIGHTS FIRST
75 Broad Street, 31st Floor
New York, NY 10004
(212) 845-5244
HughesA@humanrightsfirst.org

Matt Adams*
Leila Kang*
Aaron Korthuis*
Glenda M. Aldana Madrid*
NORTHWEST IMMIGRANT
    RIGHTS PROJECT
615 Second Avenue, Suite 400
Seattle, WA 98104
(206) 957-8611
matt@nwirp.org

*Attorneys for Plaintiffs-Appellants*

Dated: September 15, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), I certify that this reply complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A), because it contains 2,600 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f). This brief complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface Microsoft Word for Microsoft 365 in 14-point Times New Roman font.

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance

## CERTIFICATE OF SERVICE

I, Trina Realmuto, hereby certify that on September 15, 2025, I caused this document to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the First Circuit using the Court's appellate CM/ECF system. Defendants-Appellants' counsel are registered CM/ECF users and will be served via the Notice of Docket Activity through this Court's CM/ECF system.

s/ *Trina Realmuto*
Trina Realmuto
National Immigration Litigation Alliance