No. 25-1393, 25-1361

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

————————————

D.V.D.; M.M.; E.F.D.; O.C.G.,

*Plaintiffs-Appellees*,

v.

U.S. Department of Homeland Security, Kristi Noem, Secretary, U.S. Department of Homeland Security (DHS); Pamela Bondi, United States Attorney General, Antone Moniz, Superintendent of the Plymouth County Correctional Facility,

*Defendants-Appellants.*

————————————

On Appeal from the United States District Court
for the District of Massachusetts

————————————

## REPLY BRIEF FOR APPELLANTS

————————————

BRETT A. SHUMATE
*Assistant Attorney General*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

SARAH WELCH
*Counsel to the Assistant
Attorney General*

ELIANIS N. PEREZ
*Assistant Director*

MATTHEW P. SEAMON
MARY L. LARAKERS
*Senior Litigation Counsel*
U.S. Department of Justice,
Civil Division
Office of Immigration Litigation
P.O. Box 868,
Ben Franklin Station
Washington, DC 20044

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................1

ARGUMENT ...........................................................................3

   1. The District Court Lacked Jurisdiction to enter its Sweeping
      Injunction .......................................................................3

     A. The Injunction Violates 8 U.S.C. §1252(f)(1).........................3

     B. The Injunction Violates FARRA and Section 1252(a)(4) ...........8

     C. Section 1252(g) Bars Plaintiffs' Claims Arising From DHS's
       Decision to Execute their Removal Orders............................12

     D. Plaintiff's Claims Are Only Reviewable, If at All, in a
       Petition for Review ....................................................16

  II. Plaintiffs' Claims Are Meritless In Any Event .................................20

     A. The Use of Diplomatic Assurances in the March 30th
       Guidance is Lawful....................................................21

     B. The Remaining Procedures in the March 30th Guidance Are
       Lawful, and Plaintiffs Are Not Entitled to Any More
       Process...................................................................26

  III. The Non-Merits Factors Favor The Government ...........................32

CONCLUSION .......................................................................33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

## CASES

*A.A.R.P. v. Trump,*
 145 S. Ct. 1364 (2025)..............................................................31

*Aguilar v. ICE,*
 510 F.3d 1 (1st Cir. 2007) ......................................................17

*American Hosp. Ass'n v. NLRB,*
 499 U.S. 606 (1991)................................................................23

*Andriasian v. INS,*
 180 F.3d 1033 (9th Cir. 1999)................................................30

*Axon Enterprise, Inc. v. FTC,*
 598 U.S. 175 (2023)................................................................10

*Camarena v. Dir., ICE,*
 988 F.3d 1268 (11th Cir. 2021)..............................................15

*E.F.L. v. Prim,*
 986 F.3d 959 (7th Cir. 2021)............................................13, 15

*El Paso Natural Gas Co. v. Neztsosie,*
 526 U.S. 473 (1999)................................................................26

*Fed. Power Comm'n v. Texaco, Inc.,*
 377 U.S. 33 (1964)..................................................................23

*Garland v. Aleman Gonzalez,*
 596 U.S. 543 (2022)..........................................................passim

*Hamama v. Adducci,*
 912 F.3d 869 (6th Cir. 2018)............................................15, 19

*Heckler v. Campbell,*
 461 U.S. 458 (1983)................................................................23

*Hollingsworth v. Perry,*
  558 U. S. 1830 (2010 ................................................................ 32

*Ibarra-Perez v. United States,*
  154 F.4th 989 (9th Cir. 2025) ............................................... 15

*Jennings v. Rodriguez,*
  583 U.S. 281 (2018) ................................................................ 18

*Khouzam v. Att'y Gen. of U.S.,*
  549 F.3d 235 (3d Cir. 2008) ................................................. 25

*Kiyemba v. Obama,*
  561 F.3d 509 (D.C. Cir. 2009) .............................................. 24

*Kong v. United States,*
  62 F.4th 608 (1st Cir. 2023) ................................................ 16

*Kossov v. INS,*
  132 F.3d 405 (7th Cir. 1998) ............................................... 30

*Landon v. Plasencia,*
  459 U.S. 21 (1982) ................................................................. 29

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,*
  567 U.S. 209 (2012) ................................................................ 18

*McNary v. Haitian Refugee Ctr., Inc.,*
  498 U.S. 479 (1991) .................................................................. 9

*Medellin v. Texas,*
  552 U.S. 491 (2008) ................................................................ 21

*Munaf v. Geren,*
  553 U.S. 674 (2008) ..................................................... 2, 23, 24

*N.S. v. Dixon,*
  141 F.4th 279 (D.C. Cir. 2025) ............................................... 5

iii

*New Orleans Public Serv., Inc. v. Council of City of New Orleans,*
  491 U.S. 350 (1989) ................................................................ 11

*Rauda v. Jennings,*
  55 F.4th 773 (9th Cir. 2022) ............................................ 13, 14

*Reno v. American-Arab Anti-Discrimination Committee,*
  525 U.S. 471 (1999) ..................................................... 11, 13, 14

*Reno v. Catholic Social Serv., Inc.,*
  509 U.S. 43 (1993) ........................................................ 9, 32, 33

*Reno v. Flores,*
  507 U.S. 292 (1993) .................................................................. 23

*Sustainability Inst. v. Trump,*
  -- F.4th --, 2026 WL 157210 (4th Cir. Jan. 21, 2026) ............... 7, 12,18

*Tazu v. Att'y Gen. U.S.,*
  975 F.3d 292 (3d Cir. 2020) ................................................... 15

*Thuraissigiam v. DHS,*
  591 U.S. 103 (2020) ........................................................... 11, 29

*Trump v. J.G.G.,*
  145 S. Ct. 1003 (2025) ............................................................ 31

*United States v. Am. Ry. Express Co.,*
  265 U.S. 425 (1924) ................................................................ 27

## Statutes

8 U.S.C. §1225(a)(1) ................................................................. 29

8 U.S.C. § 1229a ....................................................................... 29

8 U.S.C. § 1229a(c)(7) ............................................................... 19

8 U.S.C. § 1231 .................................................................... 12, 21

iv

8 U.S.C. § 1231(b) ................................................................... 3, 7

8 U.S.C. § 1231(b)(3) ......................................................... 20, 22

8 U.S.C. § 1252(a)(4) ................................................................. 8

8 U.S.C. § 1252(a)(5) ............................................................... 17

8 U.S.C. § 1252(b)(9) ................................................... 16, 18, 19

8 U.S.C. § 1252(f)(1) ........................................................... 1, 3, 5

8 U.S.C. § 1252(g) .................................................................... 13

8 U.S.C. § 1255a(f)(1) ................................................................ 9

## **<u>Rules</u>**

Federal Rule of Civil Procedure 23(b) ..................................... 30

## **<u>Regulations</u>**

8 C.F.R. § 208.16(f) .................................................................. 12

8 C.F.R. § 208.18 ...................................................................... 19

8 C.F.R. § 245a.1(n) ................................................................. 27

8 C.F.R. § 1292.5(a) ................................................................. 28

## <u>INTRODUCTION</u>

This Court should vacate the district court's sweeping injunction usurping the Executive Branch's authority to execute valid removal orders to third countries. Plaintiffs disregard *three* separate sets of jurisdictional bars, fail to establish that DHS's procedures are constitutionally inadequate, and provide no legal basis for the additional procedures invented by the district court for a class that includes many aliens who lack entitlement to procedures beyond those provided by the political branches.

Plaintiffs merely reprise the district court's atextual arguments for evading the jurisdictional bars that the injunction violates. Most egregiously, even though the injunction indisputably "restrain[s] the operation" of third-country removals on a behalf of a nationwide class, 8 U.S.C. § 1252(f)(1), Plaintiffs insist that Section 1252(f)(1) does not apply because the injunction restrains DHS from implementing a covered provision (Section 1231(b)) only in order to enforce a non-covered provision (FARRA). But every single Justice in *Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022), rejected that argument.

1

Plaintiffs fare no better in arguing that the injunction does not run afoul of the other jurisdictional bars the district court trampled—both those that preclude challenges specifically to the government's implementation of CAT and those that generally strip jurisdiction over freestanding suits arising from actions taken to execute removals. Congress made crystal clear, at least four times over, that claims like Plaintiffs' must be brought in petitions for review of final removal orders or not at all.

Plaintiffs also fail to rehabilitate the district court's merits analysis. They barely try to defend its due-process holding, instead offering their own view that the injunction is justified by FARRA and its implementing regulations. And they identify no source of law—constitutional, statutory, or regulatory—that authorized the district court to "second-guess" the Government's approach to using country-wide assurances in the March Guidance. *Munaf* v. *Geren*, 553 U.S. 674, 702 (2008). They similarly offer no persuasive legal argument to justify the rewriting of the March Guidance to provide longer time periods and elaborate additional procedures. And Plaintiffs fail to even respond to the

government's argument that the class has no due-process right to *any* more procedures beyond what the political branches have provided.

Finally, the equities cannot save the injunction below. The district court's order harmed American sovereignty, foreign policy, and national security, and touched off direct defiance of the Supreme Court's stay, inflicting more of the same harms, in district courts across the country.

Third-country removal is an essential tool for removing aliens who cannot be removed to the countries designated in their final removal order—especially the worst-of-the-worst criminal aliens whose home countries will not take them back. The Supreme Court has already recognized that the balance of the equities tips in favor of the government. This Court should too.

## ARGUMENT

### I.    The District Court Lacked Jurisdiction to Enter its Sweeping Injunction.

#### A.    The Injunction Violates 8 U.S.C. § 1252(f)(1).

Section 1252(f)(1) bars lower federal courts from issuing classwide injunctions that "enjoin or restrain the operation" of a covered statutory provision. The district court enjoined the government from "removing any alien to a third country" pursuant to 8 U.S.C. § 1231(b)—which all agree

is a covered provision—unless DHS first follows certain procedures. Add.49. Plaintiffs fail to reconcile the injunction with Section 1252(f)(1) and repeat arguments in response to this Court's questions that the Supreme Court has already rejected.

Regarding the Court's first question, Plaintiffs contend the injunction does not "enjoin or restrain the operation of" Section 1231(b) because the injunction just enforces FARRA. Pl.Br. 17. But the provision the injunction is *enforcing* is immaterial under Section 1252(f)(1), which applies "[r]egardless of the nature of the action or the claim," and turns only on what provisions the injunction is *restraining*. If the injunction orders "federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions"—including Section 1231(b)—it is barred. *Aleman Gonzalez*, 596 U.S. at 550. That is why every Justice in *Aleman Gonzalez* rejected this maneuver. The majority explained that Section 1252(f)(1) bars relief that forces the Government to operate a covered provision in a different way, regardless of how the claim is framed. *Id.* at 552. And the dissent agreed that § 1252(f)(1) would bar injunctions "as to claims that arise from any statutes external to the covered INA provisions," like "the

4

Religious Freedom Restoration Act [RFRA]." *Id.* at 567. Section 1252(f)(1) bars claims purporting to enforce a non-covered provision (*e.g.,* FARRA) if those claims would *also* enjoin or restrain a covered provision (*e.g.,* Section 1231(b)). *Id.* Plaintiffs do not identify any reason why § 1252(f)(1) would treat FARRA any differently from RFRA.

Following the Supreme Court, the D.C. Circuit correctly rejected a similar argument. It held an injunction was impermissible because it "clearly affects provisions to which § 1252(f)(1) applies," regardless of what other statutes also "governed" the enjoined actions. *N.S. v. Dixon*, 141 F.4th 279, 289 (D.C. Cir. 2025). Plaintiffs offer no retort to this squarely-on-point case.

Plaintiffs concede more than they apparently realize by admitting that under *Aleman Gonzalez*, Section 1252(f)(1) "encompasses a challenge to the statute itself, such as a claim that the referenced statute is unconstitutional *or violates some separate statutory right*." Pl.Br. 18 n.9 (emphasis added). That is *precisely* the claim Plaintiffs are making here. They argue that the way Defendants are operating Section 1231(b) violates their "separate statutory right[s]" under FARRA. But as the

Supreme Court recognized, Section 1252(f)(1) bars injunctions based on their effect on a covered statute, not the legal authority they invoke.

Plaintiffs rely on FARRA again to argue—in response to the Court's third question—that the injunction's impact on Section 1231(b) is too "attenuated" to trigger Section 1252(f)(1). The injunction's impact on the Government's operation of Section 1231(b) is not collateral or attenuated. It operates directly on third-country removals under Section 1231(b). The mandatory, multistep procedural regime the district court invented directly and intentionally controls the way the Government can exercise its third-country removal authority—by barring such removals unless the new regime is satisfied.

That is as direct as it gets, and it is not "collateral" in any sense. Indeed, it looks just like *Aleman Gonzalez*, where the district courts likewise enjoined the government from exercising its authority under a covered statute (again, Section 1231) unless it complied with another set of fabricated procedural requirements. 596 U.S. at 546. Here, just as there, the injunction does not categorically bar the Government from using Section 1231(b), but it is impermissible because it forces officials to "take actions that (in the Government's view) are not required by [Section

6

1231(b)] and to refrain from actions that (again in the Government's view) are allowed by [Section 1231(b)]." *Id.* at 551.

Contrary to Plaintiffs' assertion (at 20), the Government's view of Section 1252(f)(1) would not "encompass all INA provisions." This is not a case where Plaintiffs have, *e.g.*, sought to post notices in detention centers or require Deportation Officers to wash their hands before returning to work—requirements that could fairly be described as having a merely collateral impact on the Government's covered detention and removal authorities.

Last, Plaintiffs err in answering the Court's question whether Section 1252(f)(1) bars classwide injunctive relief necessary to make individualized review available. *See* May 16, 2025 Order. Plaintiffs contend that the phrase "with respect to the application of such provisions to an individual alien" supports their interpretation. But the Supreme Court "has already commented on the meaning of this exception." *Aleman Gonzalez,* 596 U.S. at 550. It just means that Section 1252(f)(1) "does not extend to individual cases." *Id.* The "individual alien" phrase in the statute is an exception allowing courts to "enter[] injunctive relief on behalf of a particular alien" while barring classwide relief. *Id.*

Plaintiffs do not address the Supreme Court's repeated and controlling interpretation of this phrase.

## B.    The Injunction Violates FARRA and Section 1252(a)(4).

The injunction also violates the CAT-specific jurisdictional bars included in the INA and FARRA. Those bars—taken together—strictly confine judicial review over claims related to CAT, channeling such claims solely to the courts of appeals in a petition for review of a final order of removal. That is the "sole and exclusive" means for the review of "any" CAT-related claim. 8 U.S.C. § 1252(a)(4); *see* FARRA § 2242(d). Plaintiffs try to circumvent these bars in two ways. Neither works.

First, Plaintiffs frame their claims not as "challenges to the outcome of a CAT case" or "to the regulations that implement CAT," but as claims "seek[ing] to enforce FARRA." Pl.Br. 22 (emphasis omitted). These are distinctions without a difference. FARRA bars judicial review of both "claims raised under" CAT *and* "any other determination made with respect to the application of the policy set forth in" CAT. § 2242(d). When the Executive sets the procedures for complying with CAT, it has made a "determination" with "respect to the application of the policy set forth in" CAT. *Id.* A challenge to that determination runs headlong into

FARRA's jurisdictional bar. The same goes for Section 1252(a)(4), which reaches "any cause or claim under" CAT—not just how CAT is applied in a discrete instance. Plaintiffs cannot both argue that their claims are "based on" FARRA, Add.27, and also avoid the statutory bars specifically designed to address challenges arising from it.

Like the district court, Plaintiffs barely engage with FARRA's text. Instead, they cite two cases interpreting different statutes. *See* Pl.Br. 23 (citing *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 491-493 (1991) and *Reno v. Catholic Social Serv., Inc.*, 509 U.S. 43, 63-64 (1993)). But insofar as those cases are relevant, they hurt Plaintiffs' position. Those opinions considered statutes that barred review of the adjudication of individual aliens' applications for benefits. *See* 8 U.S.C. §§ 1255a(f)(1), 1160(e)(1). Those individual-application-focused bars permitted programmatic challenges to the procedures used to adjudicate applications. *McNary*, 498 U.S. at 492. FARRA does the exact opposite: it leaves open a mechanism for review of individual CAT claims, Pl.Br. 24 n.10, while foreclosing challenges to "a group of decisions or a practice or procedure employed in making decisions," *McNary*, 498 U.S. at 492. Indeed, it bars all challenges to implementing regulations and channels

9

challenges to *every* "determination made with respect to the application of the policy set forth in" CAT. FARRA § 2244(d). That Congress knows how to use narrower language when it wishes to limit the scope of a provision like this one only underscores that FARRA should be given its natural—and expansive—reading here.

Plaintiffs' analogy (at 24) to *Axon Enterprise, Inc. v. FTC* is unpersuasive. 598 U.S. 175 (2023). *Axon* concerned the FTC Act, which provides for court of appeals review of agency determinations in challenges to agency actions and *only implicitly* repeals district courts' jurisdiction over claims that can be brought through that process. *Id.* at 185-86. In a scheme with that structure, every claim can be raised somewhere, and the only question is whether a given claim must begin in the agency's adjudication process or in the district court. *Id.* That is why, in the FTC Act scheme, problems with securing effective review of a claim before the agency suggest that the claim belongs instead in the district court. *See id.* at 185-87, 190-92.

Here, the stark differences in the statutes at issue mean that no similar suggestion arises. Three different provisions each independently apply, and each functions by expressly (not implicitly) diverting district

courts of jurisdiction and providing that review, if any is available, rests exclusively in the petition-for-review process. The fact that those bars, fairly read, leave little room for sweeping and rapid judicial intervention in response to programmatic challenges does not suggest that Congress expected district courts to intervene.  Instead, precluding district court review is the result Congress intended and the result this Court must respect. "Congress, and not the Judiciary, defines the scope of federal jurisdiction." *New Orleans Public Serv., Inc. v. Council of City of New Orleans,* 491 U.S. 350, 359 (1989). And the immigration laws regularly entrust the Executive Branch with making final determinations regarding the liberty of aliens—including those who have raised CAT (or similar) claims. *See, e.g., DHS v. Thuraissigiam*, 591 U.S. 103, 112 (2020); *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 486-87 (1999) (*AADC*).

That result is especially unsurprising here, where class members have already undergone removal proceedings and had the opportunity to seek CAT protection. After those proceedings, which are judicially reviewable, the Executive Branch retains broad discretion to execute removal orders by sending aliens to available third countries, as

11

appropriate. *Cf.*, *e.g.*, 8 C.F.R. § 208.16(f) ("Nothing in this section … shall prevent [DHS] from removing an alien to a third country other than the country to which removal has been withheld or deferred."). Rather than imposing another round of judicial superintendence, Congress at that point entrusted the Executive with carrying out that discretion—just as Congress entrusted the Executive with exclusively designing the procedures to implement CAT in the first place. *See* 8 U.S.C. § 1231 note. And Plaintiffs' suggestion (at 25) that Congress's decision to limit appeals for aliens with reinstated removal orders or post-entry aggravated felony convictions could somehow leave those aliens *more* free to raise programmatic challenges directly in direct court gets things precisely backwards.

### C.    Section 1252(g) Bars Plaintiffs' Claims Arising From DHS's Decision to Execute their Removal Orders.

Section 1252(g) likewise bars review of Plaintiffs' claims. Plaintiffs' attempt to argue otherwise requires misreading Supreme Court precedent—which in fact supports the Government—and declining to engage with the statute's plain text.

First, Plaintiffs fail to grapple with Section 1252(g)'s text. Nowhere do Plaintiffs try to explain how a suit challenging the removal of aliens

to third countries is not one "arising from" the Government's "action" to "execute removal orders against an[] alien." 8 U.S.C. § 1252(g). Like the district court, Plaintiffs' answer (at 40-43) is that Section 1252(g) is somehow limited to "discretionary decisions" only—and thus is not applicable here because the Government does not have the discretion to break the law. But as multiple courts of appeals have recognized, "the distinction between DHS's 'discretionary decisions' and its 'legal authority' to execute removal orders is illusory," with no basis in the statutory text. *E.F.L.* v. *Prim*, 986 F.3d 959, 965 (7th Cir. 2021); *see also, e.g.*, *Rauda* v. *Jennings*, 55 F.4th 773, 778 (9th Cir. 2022).

Plaintiffs are wrong (at 41) to try to root their atextual position in *AADC*. There, the Supreme Court held that Section 1252(g) was "narrower" than some courts had read it—to broadly cover all immigration enforcement—and instead was limited to the three discrete acts that the provision expressly enumerates. 525 U.S. at 482. In describing Section 1252(g), the Court explained that it made sense for Congress to single out these three acts, because they typically involved instances of executive "discretion." *Id.* at 483-84. But at no point did the Court suggest that Section 1252(g) does *not* apply to these three discrete

13

acts if challenged on *non*-discretionary grounds. Nor would it have, because the alien plaintiff in *AADC* raised a constitutional, legal challenge just as Plaintiffs do here. *Id.* at 479.

Plaintiffs also ignore that Congress *did* craft limits on other judicial review bars that shield only discretionary judgments—including in Section 1252 itself—but it chose not to use similar language here. 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review … any other decision … the authority for which is specified … to be in the discretion of the Attorney General"); *see, e.g.*, *id.* § 1226(e) ("The [Secretary's] discretionary judgment regarding the application of this section shall not be subject to review."). That is why other circuits have widely rejected attempts to limit this bar to discretionary actions, even when an alien pressing a constitutional claim seeks to pause removal while he seeks other immigration relief. Def.Br. 48-49 (collecting cases).

These cases cannot be distinguished. In *Rauda* and *Hamama,* the alien plaintiffs sought to "enforce" the same protections against torture as Plaintiffs do here to prevent their removal while they litigated fear claims they allegedly did not have the opportunity to raise earlier. *Rauda v. Jennings,* 55 F.4th 773, 776 (9th Cir. 2022) (describing how the

14

plaintiff moved to reopen his CAT proceedings); *Hamama v. Adducci,* 912 F.3d 869, 873 (6th Cir. 2018) (describing how the plaintiffs sought a stay while they asserted fear claims). And in *Tazu, Camarena,* and *E.F.L.,* the plaintiffs sought to "enforce" a regulation or statute that they claimed created a procedural due process right to remain in the United States temporarily. *Camarena v. Dir., ICE*, 988 F.3d 1268, 1272-73 (11th Cir. 2021); *E.F.L. v. Prim,* 986 F.3d 959, 962 (7th Cir. 2021); *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 295-96 (3d Cir. 2020).

It is confounding that Plaintiffs claim (at 42) that these aliens were not also raising claims related to an "antecedent, mandatory obligation," where each claim arose from what each plaintiff described as mandatory obligations created by statute, regulation, and the Constitution prior to DHS's actions to remove them. Equally confounding is Plaintiffs' insistence (at 42-43) that their claims differ from *Rauda* and *Hamama* because those cases concerned discretionary motions to reopen. Plaintiffs here also seek—and the district court ordered they be allowed—to move to reopen their proceedings to assert fear claims.

Plaintiffs' citation to *Ibarra-Perez v. United States,* 154 F.4th 989 (9th Cir. 2025) does not move the needle. Pl.Br. 42-43. *Ibarra-Perez*

concerns the Federal Torts Claims Act, it is not binding on this Court, and the time to seek further review, including *certiorari*, has not yet expired.

Finally, Plaintiffs again cite *Kong.* But this Court's decision in *Kong* was based on its determination that Kong presented a challenge to his *detention,* not his *removal. Kong v. United States,* 62 F.4th 608, 616-17 (1st Cir. 2023). This Court made clear that if Kong had sought a stay of his removal—as opposed to merely relief from detention—it would have held that Section 1252(g) applied. *Id.* Conversely, Plaintiffs' claims are entirely based on DHS's decision to execute their removal orders and the procedures they seek would interfere with actions "integral to the act of executing a removal order," *Id.* Accordingly, *Kong* does not bear on this Court's decision in this case.

### D. Plaintiffs' Claims Are Only Reviewable, If at All, in a Petition for Review.

Plaintiffs' arguments regarding Sections 1252(a)(5) and (b)(9) fare no better. The INA bars the federal district courts from reviewing any suit "arising from an[] action taken or proceeding brought to remove an alien," 8 U.S.C. § 1252(b)(9)—instead providing that the "sole and exclusive" forum for such a claim must be an appellate court, considering

16

a petition for review of a final order of removal, *id.* § 1252(a)(5). Plaintiffs insist that their claims fall outside this bar but fail to substantively grapple with the actual text. Citing only Section 1252(a)(5), Plaintiffs argue that because their claims arose after their removal proceedings ended, neither section bars their claims. That argument is inconsistent with the statutes' text and this Court's precedent.

Take first this Court's own proclamation that "nothing in the statute limits its reach to claims arising from extant removal proceedings … . More importantly, such a reading would render the word "action" superfluous and effectively excise it from the statute." *Aguilar v. ICE,* 510 F.3d 1, 11 (1st Cir. 2007). Where the claim can "effectively be handled through the administrative process," Section 1252(b)(9) bars district court review. *Id.* Plaintiffs' citation to *Ibarra-Perez,* in which the mandate has not issued and one judge dissented, does nothing for their argument. That an alien may not be able to rapidly obtain a preferred remedy—like a preliminary injunction or stay of removal—or that immigration judges may have discretion over whether to grant the motion to reopen does not change that analysis. This Court is bound by *Aguilar,* which dictates that claims that can be raised through the

17

administrative process *must* be raised *only* through the administrative process. And that is plainly correct. *See Sustainability Inst. v. Trump*, -- F.4th --, 2026 WL 157210, at \*7 n.7 (4th Cir. Jan. 21, 2026); *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216 (2012) ("[W]hen Congress has dealt in particularity with a claim and [has] intended a specified remedy—including its exceptions—to be exclusive, that is the end of the matter.").

Nothing in *Jennings* v. *Rodriguez*, 583 U.S. 281 (2018), is to the contrary. *Jennings* read Section 1252(b)(9) not to cover certain categories of claims that were either orthogonal to removal or could never be reviewable in any form. Plaintiffs make no effort to explain how *Jennings* endorsed a suit that exclusively challenges "an[] action taken … to remove an alien from the United States." 8 U.S.C. § 1252(b)(9).

Plaintiffs also fail to establish that their claims cannot be raised in the administrative process. Rather, they argue that it would be difficult and inconvenient to do so prior to removal. But that is not the standard this Court espoused in *Aguilar*, and it bears no relation to the statutes' text. At minimum, Plaintiffs' arguments fail, and the injunction is meritless, with respect to class members who can unquestionably and

even conveniently raise their claims via a motion to reopen. Some class
members can still file a statutory motion to reopen. *See* 8 U.S.C.
§ 1229a(c)(7) (allowing a motion to reopen within 90 days after removal
order becomes administratively final). Other aliens who may soon
become class members can raise fear claims to third countries in their
ongoing proceedings. *See generally* 8 C.F.R. § 208.18. To the extent an
alien alleged he could not raise such a claim in his removal proceedings,
that issue would be reviewable in the first instance in a petition for
review. *See* 8 U.S.C. § 1252(b)(9). Still other aliens who are not detained
can move to reopen and work through the review process without any of
the "practical" impediments Plaintiffs raise. Pl.Br. 30-31. Finally, some
aliens will receive substantial advance notice of where DHS intends to
remove them, thereby making their notice objection moot for those class
members.

It is simply untrue that district court review must be available
because there is no administrative process available to Plaintiffs.
Congress has provided aliens with a motion-to-reopen process should
CAT concerns arise at any point during the pendency of removal. *See*,
*e.g.*, *Hamama* v. *Adduci*, 912 F.3d 869, 876 (6th Cir. 2018), *cert. denied*,

141 S. Ct. 188 (2020). Plaintiffs may wish that these procedures were even more generous. But that policy objection cannot vest the district court with jurisdiction in the teeth of Congress's contrary decision.

## II.   Plaintiffs' Claims Are Meritless In Any Event.

While Plaintiffs repeat much of the district court's jurisdictional analysis, they understandably shy away from its reasoning when it comes to the merits. The district court grounded its injunction solely in the Due Process Clause, and it crafted the injunction's requirements solely based on the procedures that it viewed the Due Process Clause as imposing. Add.41 (finding only that plaintiffs would likely succeed on their "procedural due process" challenge). Plaintiffs largely take a different tack, attempting to root the injunction in CAT, FARRA, implementing regulations, and even the withholding of removal statute, 8 U.S.C. § 1231(b)(3). *See* Pl.Br. 47.[1] The district court's constitutional reasoning is unsustainable, and Plaintiffs have no statutory or regulatory right to the procedures they seek and the district court ordered. None of the

---

[1] Plaintiffs elsewhere admit that "classwide injunctive relief is not available to enforce [the] protections" of Section 1231(b)(3). Pl.Br. 17 n.8. That is plainly correct, and the Court should reject any retreat to justifying the injunction based on withholding of removal.

20

statutes and regulations Plaintiffs cite applies to third-country removal under Section 1231(b) or comes close to justifying the injunction. And if the Court concludes that the injunction cannot stand on the procedural due process ground on which the district court relied, it should simply vacate the injunction, not craft a different injunction (particularly when Plaintiffs have not cross-appealed the district court's ruling). If the Court reaches the merits, it should vacate the injunction.

## A. The Use of Diplomatic Assurances in the March 30th Guidance is Lawful.

The March Guidance provides that where a third country provides a "diplomatic assurance[] that aliens removed from the United States will not be persecuted or tortured" there, and "the Department of State believes those assurances to be credible," the alien "may be removed without the need for further procedures." Appx. 120-21. Plaintiffs contend this process is unlawful. They are wrong.[2]

---

[2] To the extent Plaintiffs rely directly on the CAT treaty itself, that is misplaced. The treaty itself created no judicially enforceable rights because it is not self-executing. *See Medellin* v. *Texas*, 552 U.S. 491, 520, 522 n.12 (2008). Nor does FARRA compel the district court's chosen policy, because FARRA does not compel *any* procedures at all—instead, it delegates that responsibility entirely to the Executive Branch. *See* 8 U.S.C. § 1231 note (providing the "heads of the appropriate agencies shall prescribe regulations to implement" CAT).

Plaintiffs primarily argue (Pl.Br. 50) that CAT's implementing regulations require an "individualized assessment" about whether a particular alien will be tortured in a given country. Of course, that has little bearing on what the *Constitution* might compel. Regardless, respondents are mistaken. They broadly cite all the provisions that apply to CAT, reasoning that because each one is phrased to apply to "an alien," every CAT-related determination must be particularized. *See id.* That does not follow. As Defendants explained (Def.Br. 58 n.2), while decisions about CAT protection are ultimately about an individual alien, nothing in the regulations compels that every component of that determination be made on an individually tailored, case-specific basis. By the same token, nothing in the CAT regulations prevents the government from concluding that an *individual* alien will not be tortured at the behest of a particular country, based on the view that *no alien* will be tortured at the behest of that country given the strength and reliability of its assurances. Put another way, even when a law "requires individualized determinations," that requirement does not displace decisionmakers' "authority to rely on rulemaking" (or, here, credible blanket assurances) "to resolve certain issues of general applicability unless Congress clearly

expresses an intent to withhold that authority." *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991); *see also*, *e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 467 (1983) (agency may rely on generally applicable medical-vocational guidelines even where statute requires individualized determinations of disability); *Fed. Power Comm'n v. Texaco, Inc.*, 377 U.S. 33, 44 (1964) (similar, under Natural Gas Act). And courts have repeatedly observed that generally applicable determinations are appropriate elsewhere in the immigration context. *See, e.g.*, *Reno v. Flores*, 507 U.S. 292, 313 (1993) (the agency need not "forswear use of reasonable presumptions and generic rules" even where statute required "'some level of individualized determination'").

Plaintiffs object to the *substantive* validity of a finding that other countries' assurances are credible, but that sort of objection does not sound in *procedural* due process at all. Def.Br. 57. More fundamentally, substantive second-guessing invites an inquiry that the federal courts have neither the authority nor institutional competence to perform. The "Judiciary is not suited to second-guess" the Executive Branch's "determinations" about how an alien will be treated in a foreign land. *Munaf* v. *Geren*, 553 U.S. 674, 702 (2008).

Plaintiffs try to distinguish *Munaf* on the ground it involved individual assurances. Pl.Br. 54. But nothing in *Munaf* turned on the scope of the decision; it turned on the substance. The federal courts are ill-equipped to "pass judgment on foreign justice systems" and consider for themselves the "sensitive foreign policy issues" bound up in this space. *Munaf*, 553 U.S. at 702. That is the constitutional responsibility of the Executive. The federal courts thus do not have a freestanding power, at least absent specific statutory authorization, to "question the Government's determination that a potential recipient country is not likely to torture a detainee." *Kiyemba* v. *Obama*, 561 F.3d 509, 514 (D.C. Cir. 2009), *cert. denied*, 559 U.S. 1005 (2010). Here, nothing in the Due Process Clause or any statute gives the federal district courts the power to dictate to the Executive *how* it makes such a determination, any more than it gives them the power to second-guess *what* the Executive decides.[3] If anything, the fact that courts are unable to second-guess the

---

[3] Respondents suggest that the March Guidance runs afoul of CAT regulations because it places the ultimate credibility determination with the Secretary of State. Pl.Br. 53. But the March Guidance only states that an alien "may" be removed once the Secretary has deemed an assurance credible. Add.2-3. It does not foreclose the appropriate officials under the cited regulation from affirming that determination, before the alien is removed to an approved third country.

credibility of individual diplomatic assurances makes it even *less* likely that they can second-guess the Executive Branch's assessment of the credibility of blanket assurances. It would be strange if an even more complex Executive Branch decision were more readily reviewable.

Plaintiffs rely on *Khouzam v. Att'y Gen. of U.S.*, 549 F.3d 235, 257 (3d Cir. 2008), to argue that due process requires that aliens be provided both notice and an opportunity to challenge the credibility and reliability of diplomatic assurances. Pl.Br. 44. But *Khouzam* is inapposite because it arose in a completely different context. In that case, an alien was previously granted CAT protection from removal to his country of origin. DHS later sought to terminate that protection and remove the alien to his home country based on that country's diplomatic assurances. At most, *Khouzam* represents non-binding authority for the proposition that *terminating* a prior grant of CAT protection based on diplomatic assurances is subject to higher scrutiny. That is irrelevant here, because class members are not being removed to a country where the Government previously determined they were likely to be tortured. Moreover, the immigration laws are replete with examples where the Executive Branch's decisions are conclusive and unreviewable. *See* Pl.Br. 30-31;

25

p. 11 *supra*. Indeed, *Munaf* squarely holds that there are certain decisions in this context where the Executive provides the last word. Nowhere do Plaintiffs explain why judicial review *must* be available here, but is permissibly absent for many other INA provisions.

## B. The Remaining Procedures in the March 30th Guidance Are Lawful, and Plaintiffs Are Not Entitled to Any More Process.

For aliens being removed to a third country not covered by credible diplomatic assurances, the March Guidance provides that DHS will first provide the alien notice of that country, and if he affirmatively states that he fears removal to that country, he is referred for a screening for eligibility for protection. Add.3. Federal law requires nothing more. Plaintiffs' arguments to the contrary are wrong.

First, the bulk of Plaintiffs' arguments are based in policy, not law. *See* Pl.Br. 56-57. These assertions are both misplaced and misguided. Plaintiffs insist that aliens should affirmatively be asked whether they fear removal, versus simply given the opportunity to express a fear. *Id.* at 56. But the district court did not impose such a requirement below, and Plaintiffs have not cross-appealed any aspect of the decision. *El Paso Natural Gas Co. v. Neztsosie,* 526 U.S. 473, 479 (1999) ("Absent a cross-appeal, an appellee ... may not 'attack the decree with a view either to

26

enlarging his own rights thereunder or of lessening the rights of his adversary.'" (quoting *United States v. Am. Ry. Express Co.,* 265 U.S. 425, 435 (1924))). DHS adopted this policy because affirmatively asking about fear of removal has been shown to result in many false answers. Add.3. The Due Process Clause does not require the Executive to invite fraud—especially since the class of aliens here all have final removal orders and thus should be aware from those prior proceedings of their ability to raise CAT claims.

Respondents similarly declare that having a "more likely than not" standard is too high. *Id.* But CAT regulations have elsewhere required aliens to establish a "prima facie case" for protection. 8 C.F.R. § 208.18(b)(2)(ii) (establishing rules for aliens whose removal orders became final before regulations took effect); *cf.* 8 C.F.R. § 245a.1(n) (defining "prima facie" as evidence sufficient to establish eligibility "in the absence of rebuttal"). That is similar to what the March Guidance requires—where aliens in a screening must make an initial showing that they are "more likely than not" to face torture, in order to warrant further process *after* the panoply of process they already received in removal

27

proceedings. Add.3. The Due Process Clause does not compel something different.[4]

Even on policy grounds, Plaintiffs' defense is lacking. A chief defect with the injunction below is that it mandates almost 25 days' worth of process for *every* CAT claim, no matter how meritless. Nowhere do Plaintiffs explain how this arrangement—where aliens have 10 days to merely voice a CAT claim, and another 15 to move to reopen after *any* adverse finding—is somehow constitutionally compelled. And while Plaintiffs endorse these built-in delays, they do not seriously contest that they are far from necessary in order to provide aliens with a sufficient opportunity to raise a CAT claim.

To the extent Plaintiffs' objections sound in due process at all, they ring especially hollow in light of the established procedures for expedited removal. Def.Br. 59-60. Plaintiffs do not respond to Defendants' argument on this point at all. Rather, they focus on the procedures that

---

[4] Plaintiffs also suggest the CAT regulations require further notice to an alien's counsel, Opp. 31, but that obligation is only triggered where a "person is required" by the *regulations themselves* "to give or be given notice," 8 C.F.R. § 1292.5(a). Plaintiffs have not identified any such provision here. And again, none of this bears on what the *Constitution* might require as to any notice.

apply in regular (8 U.S.C. § 1229a) removal proceedings, without mentioning the more analogous expedited removal statutory and regulatory scheme. Pl.Br. 55-59.

Plaintiffs' attempt to augment the March Guidance with their own preferred policy is especially misguided because, for much of the class, the Due Process Clause does not require anything more than what the political branches provide. As Defendants explained at length (at 61-66), Plaintiffs who have never been admitted to the United States have only those due process rights Congress provides. The Due Process Clause does not provide favored treatment to those who evade detection in breaking our laws, versus those who either lawfully present themselves at the border or are immediately captured in its vicinity. Instead, for removal purposes, the entry that may cause an alien's "constitutional status [to] change[]" is only when he "gains *admission* to our country." *Landon* v. *Plasencia*, 459 U.S. 21, 32 (1982) (emphasis added). Where an alien has *never* been admitted by immigration officers, the Due Process Clause treats him the same way he should have been treated—as someone applying for admission at the border. *See Thuraissigiam*, 591 U.S. at 138-40; 8 U.S.C. 1225(a)(1). Plaintiffs do not address this argument.

Instead, Plaintiffs cite district court decisions issuing relief from third country removal to class members in contravention of Federal Rule of Civil Procedure 23(b) and the Supreme Court's stay of the injunction. These decisions are erroneous for the same reasons the district court's injunction is erroneous, and they of course do not bind this Court. Plaintiffs also cite inapposite decisions from other courts of appeals concluding that immigration judges violated regulations by not providing sufficient notice to permit assertion of a fear claim during removal proceedings. *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999); *Kossov v. INS*, 132 F.3d 405, 408-09 (7th Cir. 1998). But the requirements—including distinct regulations, *see Kossov*, 132 F.3d at 408—governing immigration judges in removal proceedings shed little light on this case. If anything, the cases highlight that Plaintiffs can point to no statute or regulation Defendants violate by removing aliens to third countries in accordance with the March Guidance. The entire thrust of Section 1231(b) is to allow DHS to remove aliens to third countries *without* a new round of lengthy removal proceedings. The district court's injunction undermines this purpose.

30

Finally, Plaintiffs overread the Supreme Court's recent decisions regarding the Alien Enemies Act (AEA), ch. 66, 1 Stat. 577. Pl.Br. 47 (citing *Trump* v. *J.G.G.*, 145 S. Ct. 1003 (2025) (per curiam) and *A.A.R.P.* v. *Trump*, 145 S. Ct. 1364 (2025) (per curiam)). There, under existing precedent and the Government's own acknowledgement, Congress *had* in fact provided procedures for aliens to challenge their designations, through the AEA and the habeas-corpus statute. Def.Br. 64. Here, by contrast, FARRA does not contemplate *any* specific procedures, and Congress *barred* review of CAT claims except through a petition for review. Nor, unlike in *J.G.G.* and *A.A.R.P.*, is the question whether removal is permissible at all. Here, all class members have final removal orders issued after all the process Congress prescribed and are concededly removable. The decisions' confirmation that due process must be tailored to the "nature of the case," *J.G.G.*, 145 S. Ct. at 1006 (citation omitted), thus underscores that they do not purport to create universal principles of due process that govern here—which is all the more apparent given that the Supreme Court stayed the district court's injunction just a couple of months after it issued *J.G.G.* and *A.A.R.P.*

## III.   The Non-Merits Factors Favor The Government.

Plaintiffs cannot save the preliminary injunction by relying on the non-merits factors. They fail to explain why even frivolous CAT claims should be able to delay removal for (at minimum) nearly a month, how such a delay could serve the public interest, or why their view of the injunction's foreign policy consequences is weightier than the Secretary of State's.

Instead, Plaintiffs claim the Supreme Court "did not address any of the four PI factors," Pl.Br. 50. That is obviously wrong. The Supreme Court applies the *Hollingsworth v. Perry* standard whether it writes an opinion or not. *Hollingsworth* v. *Perry*, 558 U. S. 183, 190 (2010). They point to district courts that have issued identical relief to members of this class in direct defiance of the Supreme Court stay and Rule 23(b)(2), missing that this undermines their argument for classwide relief. Pl.Br. 60. They cite news articles outside the record to support their irreparable harm argument, missing that experiencing harsh living conditions relative to the United States does not alone meet the extraordinarily high bar of torture. *Id.* 61. Finally, Plaintiffs fault Defendants for focusing on removing criminal aliens as favoring the public interest, missing that

32

that is a major theme of the INA and paramount to protecting the security of the United States. *Id.* 63. As the Supreme Court recognized, the equities tip in the government's favor.

## CONCLUSION

The Court should vacate the preliminary injunction and the orders continuing, modifying, and enforcing it.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney
General

SARAH WELCH
Counsel to the Assistant
Attorney General

ELIANIS N. PEREZ
Assistant Director

MATTHEW P. SEAMON
Senior Litigation Counsel

/s/ *Mary L. Larakers*
MARY L. LARAKERS
(Texas Bar # 24093943)
Senior Litigation Counsel
U.S. Department of Justice, Civil
Division
Office of Immigration Litigation
P.O. Box 868, Ben Franklin
Station
Washington, DC 20044
(202) 353-4419
(202) 305-7000 (facsimile)
mary.l.larakers@usdoj.gov

33

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,497 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) and First Circuit Rule 32(a)(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Mary L. Larakers*
MARY L. LARAKERS